UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| LEN STOLER, INC. d/b/a LEN STOLER AUDI, <br><br> Plaintiff, <br><br> *v.* <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., <br><br> Defendant. | Case No. 1:15CV1659-TSE/JFA |

## DEFENDANT AOA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE (DKT. NO. 30)

Len Stoler's newly declared opposition to AoA's motion for leave to amend fails accurately to apprise the Court of the factual circumstances surrounding AoA's motion, is insufficiently attentive to Fourth Circuit precedent and Maryland law, and runs counter to the position that Len Stoler's counsel announced to AoA's counsel within the past week.

AoA's motion for leave to amend should be granted. AoA filed its motion just 43 days after this Court entered a scheduling order, 49 days after AoA filed its answer, *and just 9 days after Len Stoler first began to undertake discovery*. At a minimum, AoA should be permitted to file its mandatory counterclaim arising under the Facility Agreement, which both parties agree can be adjudicated as a matter of law and which is likely to be lost forever if leave to amend is not granted. AoA should also be granted leave to file its amended affirmative defenses, as to which Len Stoler's opposition appears not to take issue.

As to the parts account counterclaim, AoA respectfully defers to the Court on whether the counterclaim should be litigated as part of the principal lawsuit. AoA believes that the claim can be litigated with little additional burden and without the need for expert testimony. Litigating the parts account counterclaim in this lawsuit would therefore be more efficient.

# ARGUMENT

I. **AoA's Motion Was Not Preceded By Any "Undue Delay."**

The cornerstone of Len Stoler's opposition is the contention that AoA unduly delayed filing its motion, which Len Stoler characterizes as an "unexcused seven-month delay in seeking to add counterclaims." (Pl. Br. at 11.) Len Stoler's position is belied by the procedural history in this case and the dates that are reflected on the Court's docket.

As the Court's docket reflects, AoA waived service in this case. AoA's answer to Len Stoler's original complaint was not (originally) due until April 4, 2016. (Dkt. No. 5.) But all proceedings were stayed in this case from March 25, 2016, to May 13, 2016, and no date was set for AoA to answer. (Dkt. Nos. 14, 18.) In lifting the stay on May 13, the Court ordered AoA to file its answer seven days later, on May 20, 2016. The Court's scheduling order that directed the parties to bring counterclaims "as soon as possible after counsel or the party becomes aware of the grounds for the motion" was entered on May 26, 2016. (Dkt. No. 24 ¶ 8(b) at 2.) Put simply then, the question before the Court fairly relates to a 43-day window, rather than a seven-month window.

AoA made good use of the time and made no attempt to delay any aspect of the proceedings. In the 43 days between the Court's scheduling order and AoA's motion, AoA drafted two settlement submissions to the Court, attended a settlement conference on June 22, made initial disclosures under the applicable civil rules, noticed two depositions, and issued document requests. AoA also corresponded with Len Stoler regarding settlement of the parties' principal dispute and corresponded with Len Stoler regarding money that Len Stoler owes AoA following the May 2016 sale of Len Stoler's Audi franchise. (This latter matter relates to the permissive parts account counterclaim, whicih only recently accrued.)

Although AoA did not attempt to file counterclaims prior to the June 22 settlement conference, counsel for AoA alerted both the Court and Len Stoler that AoA would seek to file counterclaims if the case did not settle. The case did not settle. Thus, seeking to add counterclaims now is not intended to leverage a settlement, as Len Stoler settlement. (*See* Pl. Br. at 5 (accusing AoA of "tactical" gamesmanship).) Rather, seeking to add the counterclaims now merely recognizes the settlement prospects in this case have grown dimmer; litigation is now underway; and filing counterclaims is the only viable way promptly to resolve all matters that arise out of or relate to the parties' relationship and the allegations in Len Stoler's amended complaint.

Finally, AoA notes that prior to filing its motion, counsel for AoA contacted counsel for Len Stoler. During that conversation, counsel for Len Stoler stated that it would not oppose AoA's motion for leave to add two counterclaims so long as a brief discovery extension were granted. (Dkt. No. 30 ¶ 5 at 2.) AoA stated that it did not oppose such relief but that it did not believe a discovery extension to be strictly necessary. (*Id.*) Despite these earlier representations, AoA learned for the first time yesterday afternoon, when it received electronic service of opposition papers, that Len Stoler had significantly altered its position on AoA's Motion.

## II.    AoA Should Be Permitted to File the Facility Agreement Counterclaim.

Len Stoler's opposition does not claim that the Facility Agreement Counterclaim would be prejudicial. (*See* Pl. Br. at 5-7 (arguing prejudice only with respect to the parts account counterclaim).) Rather, Len Stoler claims that the Facility Agreement Counterclaim would be futile. Not so.

As Len Stoler acknowledges at the outset of its opposition, Stoler seeks "redress for Audi's unlawful actions relating to . . . its cessation of payments, beginning in 2016, of monetary

3

bonuses on the basis of Stoler's purported failure to comply with provisions of [the Facility Agreement]." (Pl. Br. at 1; *see also* Dkt. No. 10 ("Compl.") ¶ 1.)

The Facility Agreement, however, contains a provision entitled "Repayment and Covenant Not to Sue." That provision provides in pertinent part that "Dealer . . . agrees and covenants not to sue AoA with respect to any alleged damages Dealer my suffer *as a result of Dealer's loss of the right to receive any Standards Bonus . . . arising out of Dealer's failure to perform its obligations under this [Facility] Agreement*." (*See* Dkt. No. 33-1 ("Facility Agreement") ¶ 5 at 5.) Count I of the Complaint not only incorporates the foregoing factual allegations but repeats that Stoler is seeking relief on the ground that "[a]s of January 1, 2016, Audi will cease to pay [bonus monies] because Len Stoler did not meet its construction start deadline [in the Facility Agreement] of December 31, 2015." (Compl. ¶ 54.) The plain language of the covenant not to sue bars relief on that claim.

In an attempt to avoid this result, Len Stoler argues (1) that AoA cannot invoke the covenant not to sue to defeat claims that fall outside the plain language of that covenant (a matter on which there is no disagreement at all), (2) that the covenant not to sue is invalid under Maryland statutory law and (3) that the covenant not to sue is invalid under—it would appear—the federal ERISA statute and Virginia common law. These arguments are not well taken and, at a minimum, Len Stoler has failed to establish that AoA's Facility Agreement counterclaim is futile.

**A.   The Scope of the Covenant Not to Sue, Though Cabined By Its Terms, Applies to Count I of the Complaint.**

AoA agrees that the covenant not to sue should be applied only to bar claims that fall within the plain language of the covenant. As set forth above, however, Len Stoler's claim to recover bonus monies that it lost because it failed to break ground on its facility by December

31, 2015, in Count I, directly violates the language of the covenant not to sue. (Stoler's arguments related to Counts II, IV, V, and VI (*see* Pl. Br. at 9-10) are thus inapposite.)

### B. The Facility Agreement Counterclaim Is Not Futile Under Maryland Law.

Len Stoler cannot defeat the plain language of the covenant not to sue (at this stage) based on its contention that the Facility Agreement itself is void under Maryland law. (Pl. Br. at 10 ("Stoler is . . . contending that the Facility Agreement violates [Md. Code, Transp. § 15-207(h)] and is accordingly null, void and unenforceable").)[1]

Contentions aside, Len Stoler has offered no legal authority for that proposition that Section 15-207(h) voids agreements—only its *ipse dixit*—and the argument ignores the gradations of judicial responses that may be appropriate when an agreement or a provision in an agreement is illegal, or renders an agreement voidable or renders an agreement void *ab initio*. Suffice it to say, AoA is not prepared to agree with Len Stoler's citation-free, black-and-white view on the matter at this time. *Compare also* Facility Agreement ¶ 6(e) (calling for modification rather than voiding "[s]hould the performance of any obligation under this Agreement violate any law of [Maryland]"), *with Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 744 (7th Cir. 1986) (Posner, J.) (explaining why illegality as a contract defense does not always invalidate entire contracts).

Len Stoler does appear to argue that AoA's Facility Agreement counterclaim is futile inasmuch as AoA seeks attorney's fees as damages for Len Stoler's violation of the covenant not to sue. (Pl. Br. at 7-8 n.4.) This argument, which is based on Maryland Transportation Code §

---

[1] Although Section 15-207(h) of the Maryland Transportation Code provide that manufacturers may not engage in certain conduct, including by entering into certain types of agreements, the statute does not provide (as some codes do) that contracts that violate the statute are void *ab initio*. *See, e.g.,* 25 C.F.R. § 533.7 (explicitly providing that certain types of contracts "are void" under federal law).

5

15-207(f)'s proviso that certain contracts "may not contain any provision requiring a dealer to pay the attorney's fees of the . . . distributor" is insufficient to establish futility for two principal reasons.

*First*, Len Stoler does not argue that a claim for attorney's fees would render the claim itself futile, just that a certain category of damages would be unavailable. Even if fees were unavailable, AoA would be entitled to nominal damages and could be entitled to equitable relief. *Cf. Carey v. Piphus*, 435 U.S. 247, 266 & n.23 (1978); RESTATEMENT (FIRST) OF TORTS § 907 (1939) ("'Nominal damages' are a trial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages."). For this reason alone, Len Stoler's arguments related to attorney's fees do not establish futility and should not impact AoA's Motion.

*Second*, Len Stoler's interpretation of the statute is incorrect. Section 15-207(f) is self-evidently directed at contracts that "contain" fee-shifting provisions. This language does not necessarily prevent courts from measuring consequential damages by reference to attorney's fees where a party breaches a covenant not to sue. That matter is simply unaddressed by Maryland's Transportation Code. And although statute law may eliminate common law rules, statutes in derogation of the common law are strictly construed, and "Maryland courts generally award damages 'which will place the injured party in the monetary position he would have occupied if the contract had been properly performed.'" *Cook v. SCI Maryland Funeral Servs., Inc.*, Civil Case No. 14-3770-GLR, 2016 WL 890298, at *6 (D. Md. Mar. 9, 2016) (quoting *Hall v. Lovell Regency Homes Ltd. P'ship*, 708 A.2d 344 (Md. App. 1998)).

In sum, Len Stoler fails to establish that, as a matter of Maryland statutory law, AoA's Facility Agreement counterclaim is futile. Therefore, the Fourth Circuit's teaching that parties should ordinarily be permitted to file compulsory counterclaims—even if brought after delay—

6

is squarely on point. (Mot. ¶ 12 at 4 (citing *Barnes Grp., Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1035 n.35 (4th Cir. 1983)).)

### C. Len Stoler's ERISA- and Virginia-Based Invalidity Arguments Are Incorrect and a Non-Sequitur.

Len Stoler next argues, principally by reference to a decision by Judge Ellis interpreting federal law and remarking upon Virginia law, that AoA's amendment is futile because the covenant not to sue in the Facility Agreement is unenforceable. (Pl. Br. at 11 (citing *Reighard v. Limbach Co. Inc.*, 158 F. Supp. 2d 730, 733 n.9 (E.D. Va. 2001) (Ellis, J.).) But the *Reighard* case has no applicability here, because the case dealt with federal ERISA rights and only suggested in a footnote that under Virginia law a pre-injury prospective waiver is invalid. "Injury" is the operative concept, because while Virginia courts have invalidated prospective waivers in the torts context, those same courts have upheld prospective waivers among sophisticated contracting parties. *See, e.g., Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007) (enforcing exculpatory clause, collecting cases, and observing that "Virginia courts regularly enforce exculpatory agreements").

More basically, Len Stoler's invalidity argument fails to establish that AoA's Facility Agreement counterclaim is futile, because the parties selected Maryland law to govern disputes arising out of or relating to the Facility Agreement. (Facility Agreement ¶ 6(e) ("Governing Law"). Maryland law appears to recognize the right to recover for breaches of covenants not to sue. *See Cook*, 2016 WL 890298 at *6 (attorney's fees for breach of a prospective agreement not to bring employment-related claims "may properly be required" as compensation).

### III.   The Parts Account Claim Should be Filed in this Action.

7

The Parts Account counterclaim only accrued after Len Stoler sold its franchise, well after the Complaint was filed. It was not obvious until after the June 22 settlement conference that Len Stoler intended to force AoA to litigate to recover monies that are owed to AoA under Len Stoler's parts account.

The matters at issue in the parts account counterclaim are straightforward and relate to amounts owed for relatively straightforward transactions that would not require expert testimony. Moreover, because the claim arises out of the same contractual relationship that forms the backbone of the claims that Len Stoler filed, litigating all the claims in one proceeding would be the most efficient way to proceed. Sound principles of judicial administration and judicial economy therefore militate in favor of litigating the parts-account counterclaim in this proceeding.

Nonetheless, because the counterclaim is permissive, it need not be brought in this action. If AoA is not permitted to bring the counterclaim in this proceeding, it would separately file its counterclaim in this district, subject to any applicable consolidation rules. Therefore, and in light of the considerations above, AoA respectfully defers to the Court on whether the parts account counterclaim should be litigated in this proceeding.

### IV. Len Stoler Has Raised No Objection to AoA's Proposed Amended Affirmative Defenses.

Finally, AoA notes that Len Stoler has not lodged any objection to AoA's proposed amended affirmative defenses. AoA therefore respectfully requests that it in all events be permitted to file its amended affirmative defenses.

### CONCLUSION

The parties have been in active litigation for weeks, not months, and the procedural posture of this case is not due to any "undue delay" caused by AoA. If AoA is not permitted to

8

bring its counterclaim based on the Facility Agreement—whose futility Len Stoler's opposition fails to establish—AoA faces the high likelihood that the claim would be lost forever. The Fourth Circuit teaches that such outcomes should be avoided. As to the parts account counterclaim, AoA believes that litigating this newly accrued claim would not be burdensome for the parties and would in fact be the most efficient way to proceed, but defers to the Court on whether the counterclaim should be added to the current lawsuit. Finally, AoA should be granted leave to amend its affirmative defenses, which Len Stoler appears not to oppose.

Dated:     July 14, 2016

Respectfully submitted,

Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows road, Suite 650
Tysons Corner
Vienna, Virginia  22182
T: (703) 748-2690
F: (703) 748-2695
mdare@islerdare.com

James R. Vogler (admitted *pro hac vice*)
Daniel R. Fine (admitted *pro hac vice*)
Jack O. Snyder, Jr. *(admitted pro hac vice)*
BARAK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinios 60606
T: (312) 984-3100
F: (312) 984-3150
Jim.volger@bfkn.com
Dan.fine@bfkn.com
Jack.snyder@bfkn.com

*Counsel for Defendant Volkswagen Group of America d/b/a Audi of America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2016, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Barbara S. Wahl, Esq.
>Arent Fox LLP
>1717 K Street, N.W.
>Washington, DC  20006
>Barbara.wahl@arentfox.com
>
>Russell P. McRory, Esq.
>Arent Fox LLP
>1675 Broadway
>New York, NY 10019
>Russell.mcrory@arentfox.com
>
>Sean Nicholas Clerget, Esq.
>Arent Fox LLP
>1717 K Street NW
>Washington, DC 20036-5344
>sean.clerget@arentfox.com

>           /s/
>R. Mark Dare, Va. Bar No. 14146
>ISLERDARE PC
>1945 Old Gallows Road, Suite 650
>Vienna, VA 22182
>(703) 748-2690
>(703) 748-2695 (fax)
>mdare@islerdare.com
>*Counsel for Defendant*
>*Volkswagen Group of America, Inc.*
>*d/b/a Audi of America, Inc.*