**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **LEN STOLER, INC. d/b/a LEN STOLER AUDI,**<br><br>**Plaintiff,**<br><br>- against -<br><br>**VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC.,**<br><br>**Defendant.** | Case No. **1:15CV1659-TSE/JFA** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

ARENT FOX LLP
Barbara S. Wahl (VSB No. 24647)
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 857-6000

*Of Counsel*:
Russell P. McRory (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
Arent Fox LLP
1675 Broadway
New York, NY 10019
Tel: (212) 484-3942

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF UNDISPUTED FACTS..............................................................................2

ARGUMENT ...........................................................................................................................6

     I.     Audi Has Admitted It Has Violated the Maryland Dealer Act...............................6

     II.    Audi's Counterclaim Violates Maryland Law and Summary Judgment
           Against It Is Warranted.......................................................................................10

     III.    None of Audi's Affirmative Defenses Counter Stoler's Statutory Rights ...........14

CONCLUSION ......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n for Supervision & Curriculum Dev., Inc. v. Int'l Council for Educ. Reform & Dev., Inc.*,
No. 10-cv-74, 2011 WL 1225750 (E.D.Va. Mar. 14, 2011) ...................................................6

*Audi of America, Inc. v. Future Vision of Aspen, Inc.*,
15-cv-00897-AJT-IDD, ECF No. 32 (E.D.Va. Sept. 18, 2015) ...............................................15

*Audi of Smithtown, Inc. v. Volkswagen Grp. of Am., Inc.*,
100 A.D.3d 669, 954 N.Y.S.2d 106 (2012)............................................................................9

*Audi of Smithtown, Inc. v. Volkswagen Grp. of Am., Inc.*,
32 Misc. 3d 409 (N.Y. Sup. Ct. 2011) .................................................................................10

*Baltimore Luggage Co. v. Holtzman*,
80 Md. App. 282 (1989) .....................................................................................................15

*Bartolomeo v. S.B. Thomas, Inc.*,
889 F.2d 530 (4th Cir. 1989) .............................................................................................14

*Beard v. American Agency Life Ins. Co.*,
550 A.2d 677, 314 Md. 235 (1988) .....................................................................................13

*Beck Chevrolet Co., Inc. v. General Motors LLC*,
27 N.Y.3d 379 (2016) ........................................................................................................16

*Mathew Enter., Inc. v. Chrysler Grp. LLC*,
No. 13-cv-4236, 2014 WL 3418545 (N.D. Cal. July 11, 2014) ..............................................9

*New Motor Veh. Bd. of California v. Orrin W. Fox Co.*,
439 U.S. 96 (1978) .......................................................................................................12, 16

*Patton v. Graves*,
224 A.2d 411, 244 Md. 528 (1966) .....................................................................................13

*Pettengill v. U.S.*,
867 F. Supp. 380 (E.D.Va. 1994) .........................................................................................6

*Queen v. Agger*,
412 A.2d 733, 287 Md. 342 (1980) .....................................................................................13

*Schlossberg v. Epstein*,
534 A.2d 1003, 73 Md. App. 415 (1988) ..............................................................................14

*South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese*,
    284 F.3d 518 (4th Cir. 2002) ................................................................................................. 14

*Western Capital Partners, LLC v. Brookhollow, LLC*,
    No. 06-cv-590, 2007 WL 1202851 (E.D.Va. Apr. 19, 2007) ................................................... 6

*Wolf v. Ford*,
    644 A.2d 522, 335 Md. 525 (1994) ..................................................................................... 12

*Ziemkiewicz v. R+L Carriers, Inc.*,
    996 F. Supp. 2d 378 (D. Md. 2014) ...................................................................................... 12

**Statutes**

Colorado Dealer Act ................................................................................................................ 15

Md. Code Ann., Transp. § 15-201, *et seq.* ............................................................................ *passim*

Md. Transp. Code § 15-101(c)(2) ................................................................................... 2, 12, 15

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................................. 6

Maryland 90 Day Report, 2009 Sess., Part G (April 21, 2009) ............................................. 10, 16

Plaintiff Len Stoler, Inc. d/b/a Len Stoler Audi ("Plaintiff" or "Stoler"), by undersigned counsel, respectfully submits this memorandum in support of its motion against Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Defendant" or "Audi") for partial summary judgment ("Motion") on Stoler's First, Second, and Third Causes of Action and against Audi's Counterclaim.

## PRELIMINARY STATEMENT

Maryland law is clear.  Distributors like Audi are prohibited from requiring or coercing dealers like Stoler to alter an existing facility, to build a new facility, or to maintain an exclusive facility.  Those prohibitions are stated broadly and in multiple permutations: facility upgrades cannot be required; facility upgrades cannot be coerced through the denial of benefits given to other dealers; facility upgrades cannot be bought through the lowering of vehicle prices paid by a dealer in exchange for an agreement to upgrade, nor can such price discounts be used to buy exclusivity.  Further, all rebates and incentives offered by a distributor must be offered to all dealers of the same line make.

Audi has now admitted to engaging in all of the prohibited conduct listed above.  In its Amended Answer and Counterclaim, Audi admits to all of the elements required for a finding of liability under Md. Code Ann., Transp. § 15-201, *et seq.* (the "Maryland Dealer Act").  Audi has admitted that it required Stoler to build an exclusive facility, that Audi entered into an agreement with Stoler to provide monetary incentives to Stoler in exchange for a promise to build a new, exclusive facility, and that it denied Stoler bonus monies it had otherwise been earning once construction of that facility did not commence.  Audi also admitted that it offered higher tier bonuses only to those dealers with exclusive facilities, and not "all dealers of the same line make," to the detriment of Stoler, violating Maryland law.  Audi's liability could not be clearer.

Finally, Audi's affirmative defenses provide no bar to summary judgment on these issues, and Audi's Counterclaim is insufficient as a matter of law.  No material issue of fact exists and this case is ripe for summary judgment.  Stoler's motion should be granted.

## STATEMENT OF UNDISPUTED FACTS[1]

1.      Plaintiff Stoler is a corporation organized and existing under the laws of the State of Maryland, with a principal place of business in Owings Mills, Maryland.  (AC ¶ 7, AA ¶ 7.)

2.      Stoler was a licensed and authorized Audi dealer and franchisee, until May 2, 2016, when Stoler sold its Audi-related business assets.  (AC ¶ 7, AA ¶ 3.)

3.      Until May 2, 2016, Stoler was a "dealer" as defined in the Maryland Transportation Code.  (AC ¶ 7.)

4.      Defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Audi"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in the Commonwealth of Virginia.  Audi purchases Audi vehicles from corporate affiliates in Germany and then imports and sells these vehicles to franchised Audi dealers throughout the United States, including Len Stoler.  (AC ¶ 8, AA ¶ 8.)

5.      Audi is a "distributor" as defined in the Maryland Transportation Code.  (AA ¶ 8.)

6.      Audi and Stoler are parties to a Dealer Agreement.  (AC ¶ 11, AA ¶ 11.)

7.      Audi maintains a Margin and Bonus Program that contains several incentives that offer a percentage of the adjusted manufacturer's suggested retail price (MSRP), paid as a cash bonus, on every new Audi vehicle sold by a dealer, provided certain criteria are met.  (AC ¶¶ 14-

---

[1] All of the following facts are taken from documents sent by Audi and from the undisputed portions of the pleadings of the parties and the agreements referenced therein, namely: Stoler's Amended Complaint ("AC"), Audi's Amended Answer ("AA"), Audi's Counterclaim ("CC"), the Dealer Agreement, and the Facility Agreement. Stoler's Amended Complaint and Audi's Amended Answer and Counterclaim are attached to the Declaration of Barry Stoler, dated August 11, 2016 ("Stoler Decl."), as Exhibits F and G respectively.

18.)

8.     One such bonus, the Standards Bonus, is related to a dealer's facilities.  (AC

¶¶ 14-18; CC ¶¶ 8-9.)  Until at least January 4, 2016, the Standards Bonus at issue in this

litigation had a two-tiered system: a lower tier, called Brand Dedicated Standards Bonus, and a

higher tier, called Exclusive Standards Bonus.  (AA ¶¶ 15-16.)

9.     A dealer who met the appropriate facility guidelines and other criteria, but who

did not have an exclusive facility, qualified only for the Brand Dedicated Standards Bonus,

which was equivalent to 2.35% of adjusted MSRP of each new car sold.  Adjusted MSRP takes

into account option package prices, destination charges, and other line-item additions and

subtractions from base model MSRP.  (AA ¶ 15.)

10.    An "exclusive" facility is one that is exclusive to the Audi brand and does not

share facilities with any other franchise operations, including sister line-makes such as Porsche

or Volkswagen.  (CC ¶ 6.)

11.    Dealers who met all of the criteria necessary to receive a Brand Dedicated

Standards Bonus but also had an exclusive facility qualified for the Exclusive Standards Bonus,

which was equivalent to 3.75% of the adjusted MSRP of every new car sold.  (AA ¶ 16.)

12.    Stoler has only ever received the Brand Dedicated Standards Bonus.  (AC ¶ 17;

Stoler Decl. ¶ 7.)

13.    Stoler has never received the Exclusive Standards Bonus because Stoler has never

had an exclusive Audi facility, nor commenced construction of one.  (AC ¶ 17; AA ¶¶ 22-23;

Stoler Decl. ¶ 7.)

14.    On September 21, 2011, Stoler (as well as all other Audi dealers) received a

memorandum from Audi, explaining their newly announced "Grandfather Policy" and "Cure

Policy." The memorandum explained updates to Audi's Dealer Operating Standards as of 2012, and also whether and when Audi would require a dealer to upgrade their facilities. (Stoler Decl. ¶ 2, Ex. A.)

15.    Audi requires its dealers with a market opportunity equal or greater to 400 units to have exclusive Audi facilities. (CC ¶ 6; Stoler Decl. Ex. A.)

16.    At some point, according to Audi's calculations, Stoler's annual market opportunity grew to exceed the 400-unit level. (CC ¶ 7.)

17.    On January 10, 2014, Stoler received a letter from Audi explaining that, based upon Audi's new projections for 2014-2016, Stoler was now required to upgrade from a brand dedicated facility to an exclusive facility. (Stoler Decl. ¶ 3, Ex. B.)

18.    On April 25, 2014, Stoler received a letter from Audi describing Stoler's scores on Audi's evaluation criteria. Stoler received a score of 100% on the "Gateway" Criteria, 86% on the "Checklist" Criteria, and "Ongoing" on the Scorecard. The minimum requirements for bonus eligibility were 100% on Gateway, 85% on Checklist, and "Ongoing" on Scorecard. Despite Stoler's passing scores, the letter still informed Stoler that the dealership was "not eligible" to receive the Standards Bonus, and advised that even Stoler if achieved passing scores, "failure to make reasonable progress" on Stoler's dealership improvement plan may result in a denial of the bonus. (Stoler Decl. ¶ 4, Ex. C.)

19.    On October 16, 2014, Stoler received a letter from Audi recapping the previous communications between the parties regarding the Grandfather Policy and Cure Policy. The letter stated that "in order to maintain Standards Bonus eligibility beyond 2014, Len Stoler Audi is required to enter a Facility Letter of Intent (LOI) by December 31, 2014." (Stoler Decl. ¶ 5, Ex. D.)

20.     Based upon the forgoing correspondence and Stoler's communications with Audi, in mid-January 2015, Audi and Stoler entered into the Facility Agreement, pursuant to which Stoler promised to construct an exclusive Audi facility, and Audi promised to pay Stoler the Exclusive Standards Bonus once construction on the new facility commenced.  (AC ¶¶ 19, 22-24; AA ¶¶ 19, 22-24; CC ¶¶ 9-10; *see also* Stoler Decl. Ex. E, Facility Agreement.)

21.     The Facility Agreement recognized that, at the time of execution, Stoler was still entitled to receive the Brand Dedicated Standards Bonus.  (Facility Agreement at ¶ 2.)

22.     The Facility Agreement required Stoler to break ground on the exclusive Audi facility by December 31, 2015, or else lose all facility-related bonus money, including the Brand Dedicated Standards Bonus.  (CC ¶ 11; AC ¶ 22; AA ¶ 22.)

23.     Stoler did not commence construction by December 31, 2015.  (AC ¶ 23; AA ¶ 23.)

24.     As a result, on January 1, 2016, Audi ceased payment of the Brand Dedicated Standards Bonus because of Stoler's failure to commence construction of an exclusive facility.  (AC ¶ 24, 54; AA ¶ 24, 54; Stoler Decl. ¶ 7.)

25.     Stoler has brought three causes of action against Audi for violation of Dealer Act § 15-207(h).  (AC ¶ 51-83.)

26.     Stoler's First Cause of Action seeks damages for failure to pay any Standards Bonus beginning January 1, 2016.  (AC ¶ 64; AA ¶ 64.)

27.     Stoler's Second Cause of Action seeks damages going back at least three years for Audi's failure to ever pay Stoler the Exclusive Standards Bonus.  (AC ¶ 74; AA ¶ 74.)

28.     Stoler's Third Cause of Action seeks a declaration that the Facility Agreement is null and void under Maryland law.  (AC ¶ 83; AA ¶ 83.)

## **ARGUMENT**

"A motion for partial summary judgment utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. U.S.*, 867 F. Supp. 380, 381 (E.D.Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985)).

"Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Ass'n for Supervision & Curriculum Dev., Inc. v. Int'l Council for Educ. Reform & Dev., Inc.*, No. 10-cv-74, 2011 WL 1225750, at *3 (E.D.Va. Mar. 14, 2011) (citing Fed. R. Civ. P. 56(c)).  In reviewing the motion, the Court first "views the facts in a light most favorable to the non-moving party." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id*.

"The non-movant must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that a genuine issue of material fact exists." *Western Capital Partners, LLC v. Brookhollow, LLC*, No. 06-cv-590, 2007 WL 1202851, at *8 (E.D.Va. Apr. 19, 2007).  "A 'material fact' is a fact that might affect the outcome of a party's case. Whether a fact is considered to be 'material' is determined by the substantive law, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Ass'n for Supervision*, 2011 WL 1225750 at *3.

## I.  **Audi Has Admitted It Has Violated the Maryland Dealer Act**

As described below, Audi has now admitted in its pleadings that it has violated Maryland Dealer Act § 15-207(h)(1), (h)(2) and (h)(3), and thus no genuine issue of material fact exists.

Accordingly, this Court should award judgment in favor of Stoler and against Audi with respect to Audi's liability under Maryland statute, pursuant to Stoler's First, Second and Third Causes of Action.

Maryland Dealer Act § 15-207 states, in relevant part:

> (h)(1)(i) Any consumer rebates, dealer incentives, price or interest rate reductions, or finance terms that a manufacturer, distributor, or factory branch offers or advertises, or allows its dealers to offer or advertise, shall be offered to all dealers of the same line make.
>
> (h)(2) …a manufacturer, distributor, or factory branch may not:
>
> > (i) Require a dealer to alter or replace an existing dealership facility; or
> >
> > (ii) Deny, or threaten to deny, any benefit generally available to all dealers for a dealer's failure to alter or replace an existing dealership facility.
>
> (h)(3) A manufacturer, distributor, or factory branch may not reduce the price of a motor vehicle charged to a dealer… in exchange for the dealer's agreement to:
>
> > (i) Maintain an exclusive sales or service facility;
> >
> > (ii) Build or alter a sales or service facility….

Md. Transp. Code § 15-207.  Audi's pleadings admit that it has violated all of the above provisions.

First, Audi has admitted to violating Dealer Act § 15-207(h)(1)(i).  Audi has admitted it engaged in a two-tiered bonus program (AA ¶¶ 15-16), which by definition means that Audi offered rebates, incentives, or price reductions to only <u>some</u> of its Audi dealers, and not "all dealers of the same line make."  Under Audi's volume planning standards, smaller volume dealers like Stoler can only receive the lower tier Brand Dedicated Standards Bonus.  That is patently unlawful.  It is undisputed that Stoler has <u>never</u> received the Exclusive Standards Bonus, and further, Audi contends Stoler has never been <u>eligible</u> for that bonus.  (CC ¶ 11.)  Therefore,

Audi never offered Stoler the Exclusive Standards Bonus, and Audi's conduct violates Dealer Act § 15-207(h)(1)(i).

Second, Audi has admitted to violating Dealer Act § 15-207(h)(2)(i).  Audi stated in its pleading that "Dealers who market opportunity equals or exceeds 400 are **required** to have facilities that are exclusive to the Audi brand (i.e., are not shared with any other franchise operations)."  (CC ¶ 6 (emphasis added).)  Furthermore, Audi stated that, because "Stoler's annual market opportunity grew to exceed the 400-unit level, it was **required** to upgrade to an exclusive facility."  (*Id*. at ¶ 7 (emphasis added).)  Therefore, Audi has plainly conceded that it has "required" Stoler to "alter or replace an existing dealership facility," in violation of § 15-207(h)(2)(i).

Third, Audi has admitted to violating Dealer Act § 15-207(h)(2)(ii).  Prior to the Facility Agreement, and as acknowledged by the Facility Agreement itself, Stoler had been and would continue to be eligible for the Brand Dedicated Standards Bonus.  (Facility Agreement ¶ 2 ("As of the date of this Agreement, Dealer is eligible for Brand Dedicated Standards Bonus….").)  Audi has admitted that, under the terms of the Facility Agreement, Stoler "lost eligibility for certain bonus payments" after December 31, 2015, when Stoler had failed to begin construction on a new exclusive facility.  (AA ¶ 23.)  Therefore, Audi has plainly stated that it has denied to Stoler a benefit generally available to all dealers, including Stoler itself, because of Stoler's "failure to alter or replace an existing dealership facility," in violation of § 15-207(h)(2)(ii).[2]

---

[2] Audi has further denied Stoler the benefit of the Exclusive Standards Bonus for Stoler's failure to build an exclusive facility.  If Audi's response to the argument regarding § 15-207(h)(1) above is that the Exclusive Standards Bonus is, in fact, "offered" to all Audi dealers, then Audi's denial of such a benefit to Stoler for failure to build an exclusive facility violates § 15-207(h)(2).  Vice versa, if Audi claims § 15-207(h)(2) does not apply to the Exclusive Standards Bonus because it is not offered to all dealers, then Audi necessarily admits liability under § 15-207(h)(1).

Fourth, Audi has admitted to violating Dealer Act § 15-207(h)(3)(i). Audi claims that, in exchange for Stoler's agreement to build an exclusive Audi facility, Stoler qualified "for bonus monies to which it was otherwise ineligible." (CC ¶ 11.) Those bonus monies—namely, the Brand Dedicated Standards Bonus and, once Stoler started construction of an exclusive facility, the Exclusive Standards Bonus—are paid on a per-car basis as a percentage of adjusted MSRP. (AA ¶¶ 15-16.) Courts have found that such per-car bonuses or rebates, regardless of whether they are paid at the time of wholesale or at a later date, have the effect of "reducing the price" paid by the dealer for the vehicle. *See, e.g., Mathew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-4236, 2014 WL 3418545 (N.D. Cal. July 11, 2014) (finding Chrysler's volume growth incentives paid on per-car basis could form basis of price discrimination allegations under Robinson-Patman Act); *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, 100 A.D.3d 669, 671, 954 N.Y.S.2d 106, 108 (2012)("Contrary to Audi's contention, it is not relevant that the discount was not offered at the time of purchase, since the rebates, although made at a later time, resulted in a lower actual price."). Therefore, by entering into the Facility Agreement, Audi violated § 15-207(h)(3)(i) by reducing the price paid by Stoler in exchange for Stoler's promise to maintain an exclusive sales or service facility.

Fifth and finally, the same analysis applies to § 15-207(h)(3)(ii). Audi lowered the price of new car inventory for Stoler in exchange for Stoler's promise to build or alter its sales or service facility. In fact, Audi admits that it has engaged in that conduct throughout the country. (*See* CC ¶ 9.) Therefore, Audi has violated § 15-207(h)(3)(ii).

No discovery, testimony, or expert analysis is needed on any of these issues of liability. The Maryland Dealer Act very clearly prohibits Audi's admitted conduct in a variety of ways. In enacting these provisions of the Maryland Dealer Act, the Maryland legislature was targeting

commercial arrangements just like the Facility Agreement, and consciously closed off the many ways a manufacturer may try to "thread the needle" and avoid the statute.  *See* § 15-207(h); Maryland 90 Day Report, 2009 Sess., Part G (April 21, 2009) (bill "adds and clarifies prohibitions or the protection of motor vehicle dealerships from discriminatory or coercive business practices by manufacturers, distributors, and factory branches and otherwise strengthens various dealership franchise rights.").  Audi cannot require Stoler to build a new facility, Audi cannot deny Stoler benefits given to other dealerships for Stoler's failure to build a new facility, nor can Audi offer to give Stoler cheaper vehicles in exchange for a promise to either build a new facility or maintain an exclusive facility.  Nor can Audi give higher tier bonuses to only some of its dealers – those bonuses have to be equally available to all Audi dealers.  Audi has no plausible counterargument to the proscriptions of § 15-207(h).

Based upon the foregoing, Audi is liable under Stoler's First, Second and Third Causes of Action, which, respectively, seek: (i) damages for failure to pay the any Standards Bonus after January 1, 2016; (ii) damages for failure to ever pay the higher-level Exclusive Standards Bonus for at least the last three years; and (iii) a declaration that the Facility Agreement is void and unenforceable under Maryland law.  This Court should therefore enter summary judgment with respect to liability on those causes of action.  *See Audi of Smithtown, Inc. v. Volkswagen Grp. of Am., Inc.*, 32 Misc. 3d 409 (N.Y. Sup. Ct. 2011) (New York court granted partial summary judgment in favor of a dealer and against Audi on liability related to portions of Audi's Margin and Bonus Program).

## II.  **Audi's Counterclaim Violates Maryland Law and Summary Judgment Against It Is Warranted**

Audi's Counterclaim and its Fifth Affirmative Defense rely upon a narrow covenant not to sue found in the Facility Agreement (the "Covenant"), which even Audi admits only

theoretically applies to Stoler's First Cause of Action.[3]  (*See* Audi's Reply Brief in Support of Motion to Amend, ECF No. 34, at 4-5 (admitting that the Covenant applies only to Count I).) Based upon this Covenant, Audi seeks attorneys' fees.  However, not only does the Covenant not apply to Stoler's First Cause of Action, but the Covenant and Audi's Counterclaim are barred by Maryland law.  Summary judgment against Audi's Counterclaim should be granted.

The Covenant at issue states as follows:

> **Repayment and Covenant Not to Sue**.  Should Dealer fail to perform any of its obligations as set forth above, Dealer will lose the right to receive any Standards Bonus and must immediately repay to AoA any Exclusive Standards Bonus monies paid under this Agreement.  Further, Dealer agrees not to dispute, either in a court of law, arbitration, or before a motor vehicle board, the decision by AoA regarding repayment of Standards Bonus monies. Dealer, by signing this Agreement, agrees and covenants not to sue AoA with respect to any alleged damages Dealer may suffer as a result of **Dealer's loss of the right to receive any Standards Bonus or requirement to repay AoA any Standards Bonus monies arising out of Dealer's failure to perform its obligations under the Agreement.**  These restrictions of Dealer's right to sue do not apply when Dealer establishes that Audi has breached its obligations under the Agreement.

Facility Agreement at ¶ 5 (emphasis added).

First, even assuming the Covenant were valid (and Stoler contends that it is not), it could not apply to any claim except one arising for breach of applicable provisions of the Facility Agreement.  But Stoler has not asserted that Audi has breached any contractual claim arising under the Facility Agreement.  Rather, Stoler is seeking to enforce its rights under the Maryland dealer protection statute, contending that the Facility Agreement violates the statute and is

---

[3] Audi has admitted that the Covenant does not apply to the Second Cause of Action, which seeks damages for Audi's failure to ever pay Stoler the Exclusive Standards Bonus, from 2013 through 2015, since, by its terms, the Covenant only refers to a "loss to a right to receive any Standards Bonus" and a "request to repay [Audi] any Standards Bonus."  No repayment is at issue here, and it is undisputed that Stoler has never qualified for the Exclusive Standards Bonus under the terms of Audi's Standards Bonus program.

accordingly null, void and unenforceable.  (*See* discussion of § 15-207(h) *supra*.)  The Maryland

Dealer Act, which reflects the will of the Maryland Legislature to regulate the motor vehicle

franchise relationships in Maryland, explicitly authorizes suit for those injured by manufacturers

who violate it.  *See* Md. Trans. Code, § 15-213.  The Covenant is not a promise by Stoler to

forgo its rights arising under the Maryland Dealer Act, and, as such, cannot override Stoler's

explicit rights authorized thereunder.  Therefore, the Covenant simply does not apply to this

lawsuit and Audi's Counterclaim fails as a matter of law.

Second, the Covenant itself is void as against public policy as it attempts inequitably to

exculpate Audi from prospective liability.  Audi enjoys grossly unequal bargaining power over

Stoler, and as such, cannot carve itself free from future suits.  *See, e.g.*, *Ziemkiewicz v. R+L*

*Carriers, Inc.*, 996 F. Supp. 2d 378, 397 (D. Md. 2014) ("Public policy dictates that a plaintiff

cannot prospectively contract to be willfully injured by another in the future."); *Wolf v. Ford*,

644 A.2d 522, 525–26, 335 Md. 525, 531–32 (1994) ("There are circumstances, however, under

which the public interest will not permit an exculpatory clause in a contract…. [T]he contract

cannot be the product of grossly unequal bargaining power.").  Under Maryland law, exculpatory

clauses can only be enforced in "the absence of legislation to the contrary."  *Wolf*, 644 A.2d at

525.  However here, Maryland law gives every dealer the right to sue for violations of the

Maryland Dealer Act, and the Covenant did not give up those rights.  Dealer Act § 15-213; *see*

*also New Motor Veh. Bd. of California v. Orrin W. Fox Co.*, 439 U.S. 96, 107 (1978) (legislature

"was empowered to subordinate the franchise rights of automobile manufacturers to the

conflicting rights of [dealers] where necessary to prevent unfair or oppressive trade practices.").

The Maryland Transportation Code makes agreements like the Facility Agreement unlawful.

Audi cannot preemptively exculpate itself from unlawful conduct.  For these reasons again, summary judgment against Audi's Counterclaim should be granted.

Third and finally, the Counterclaim is barred by Maryland law because it would require a dealer to pay a distributor's attorney's fees based upon a contractual provision between the dealer and distributor.  This is expressly prohibited.  Maryland Dealer Act § 15-207(f) states that "[a] franchise agreement or other contract offered to a dealer by a manufacturer, distributor or factory branch may not contain any provision requiring a dealer to pay the attorney's fees of the manufacturer, distributor, or factory branch related to disputes involving the franchise."  The Covenant is contained in a contract imposed on dealer Stoler by distributor Audi, and the Counterclaim seeks payment of Audi's attorneys' fees for Stoler's purported violation of the Covenant.  Contract terms that are in derogation of Maryland statutory law are unenforceable. *See Beard v. American Agency Life Ins. Co.*, 550 A.2d 677, 686-87, 314 Md. 235, 255 (1988) (finding that "contracts made in contravention of statutory law are void") (citing *Lester v. Howard Bank*, 33 Md. 558, 562 (1871)); *see also Queen v. Agger*, 412 A.2d 733, 287 Md. 342, 346  (1980) ("[c]ontracts which violate statutes will not be enforced"); *Patton v. Graves*, 224 A.2d 411, 413, 244 Md. 528, 532 (1966) ("where the contract which the plaintiff seeks to enforce is expressly or by implication forbidden by the statute, no Court will lend its assistance to give it effect").  The Facility Agreement is therefore unenforceable, and Audi's Counterclaim is prohibited under Maryland law.

**III.    None of Audi's Affirmative Defenses Counter Stoler's Statutory Rights**

None of Audi's affirmative defenses[4] trump the statutory rights asserted by Stoler.  As such, they cannot be used as a reason to deny summary judgment here.

Audi's First Affirmative Defense states that Stoler's claims are barred by its material breach of the Facility Agreement.  But Stoler's statutory claims argue that the Facility Agreement itself violates Maryland law, and, as discussed above, Stoler is making no claims under the Facility Agreement.  Therefore, Stoler's purported "breach" of the Facility Agreement has no bearing on Stoler's statutory claims; one has nothing to do with the other.  *Cf. South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese*, 284 F.3d 518, 537 (4th Cir. 2002) ("the mere fact that Simpson did not breach his contractual obligations does not, standing alone, mean that he did not [violate the statute]"); *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) ("We upheld the plaintiff's breach of contract claim… but nonetheless agreed with the court that no violation of the Act had occurred.").

Audi's Second and Third Affirmative Defenses go to damages; they argue that Stoler's claims are barred by failure to mitigate and by principles of offset.  However, such defenses are no defenses to liability on the claims themselves.  *See Schlossberg v. Epstein*, 534 A.2d 1003, 1006, 73 Md. App. 415, 421 (1988) ("The doctrine of minimization of damages is not a defense to a plaintiff's cause of action….").  As liability is the only subject of this motion, these affirmative defenses can be disregarded.

Audi claims in its Fourth Affirmative Defense that Stoler no longer has standing to sue, because it is no longer an Audi franchisee.  Audi is wrong.  There is no question that, during the

---

[4] Audi's Seventh Affirmative Defense states that Stoler's claim for injunctive relief is barred or moot because of Stoler's sale of the Audi franchise.  Stoler does not disagree and no longer seeks any injunctive relief in this matter.  The judgment of liability sought here under Stoler's statutory rights does not require any injunction.

relevant timeframe at issue in this action, Stoler was a "dealer" under Maryland Transportation Code, as Stoler was a "person" who was "in the business of buying, selling, or exchanging vehicles." Md. Transp. Code § 15-101(c)(2).  In fact, under the statute as of this very date, Stoler is still considered a "dealer" since, in the last 12 months, Stoler has sold three or more vehicles. *See id.*  Moreover, since Stoler still exists as a legal entity, its right to sue upon causes of actions it accrued while a dealer has not been extinguished.  *See, e.g.*, *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 301 (1989) (the power to sue or be sued in a corporate name "is not extinguished, however, unless there [has] been an effectual legal dissolution."); *Audi of America, Inc. v. Future Vision of Aspen, Inc.*, 15-cv-00897-AJT-IDD, ECF No. 32, Hearing Tr. at 22 (E.D.Va. Sept. 18, 2015) (in a case regarding a very similar Facility Agreement between Audi and another dealer, "the Court concludes that the Colorado Dealer Act continues to apply to the facilities agreement to the extent applicable even though the defendant is no longer a dealer.").

Audi's Fifth Affirmative Defense, based upon the Covenant, is inapplicable and void against public policy, as addressed above.

Audi's Sixth Affirmative Defense seeks to bar Stoler based upon the doctrine of unclean hands or *in pari delicto*.  However, the statutory scheme set up by the Maryland Legislature puts all the responsibility of compliance in the hands of the manufacturer or distributor.  Audi only accuses Stoler of not commencing construction of a new, exclusive facility by December 31, 2015, and therefore cannot be at equal fault for Audi's statutory violations predating Stoler's alleged inaction.  The statute forbids the distributor from requiring facility upgrades or from offering discounts in exchange for exclusive facilities; it does not forbid the dealer from acquiescing to those requirements or accepting those discounts.  *See* Dealer Act § 15-207(h). The reason for this is clear: the manufacturer or distributor has vastly greater and unequal

15

bargaining power than the dealer.  Thus, for example, New York's highest court has found that its Dealer Act, very similar to the Maryland Dealer Act here, was enacted precisely because of the inequality between manufacturers and dealers:

> By enacting the Dealer Act, the legislature sought to address a historical inequality in the vehicle franchise business that favored automobile manufacturers over motor vehicle dealers…   The imbalance placed dealers at the mercy of manufacturers who were able to draft and impose protectionist agreements favorable to manufacturers, placing at risk a dealer's financial investment. […] The legislature thereby sought to affirmatively "establish an equilibrium of bargaining power."

*Beck Chevrolet Co., Inc. v. General Motors LLC*, 27 N.Y.3d 379, 393-394 (2016) (*internal quotations omitted*). Similar motivations preceded the enactment of § 15-207(h) here.  *See* Maryland 90 Day Report, 2009 Sess., Part G (bill "adds and clarifies prohibitions or the protection of motor vehicle dealerships from discriminatory or coercive business practices by manufacturers, distributors, and factory branches and otherwise strengthens various dealership franchise rights."); *Orrin W. Fox*, 439 U.S. at 100-101, 101 n. 5 (holding that "The disparity in bargaining power between manufacturers and their dealers prompted Congress and some 25 States to enact legislation to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers," referencing, *inter alia*, the Maryland Dealer Act.)  It is not possible for the dealer to be at "equal fault" with its unequal manufacturer or distributor counterpart. Therefore, *in pari delicto* does not apply to Stoler's statutory claims.

## <u>CONCLUSION</u>

Audi has violated Maryland statute, as it has admitted in its pleadings, and therefore summary judgment on the issue of liability on Stoler's First, Second, and Third Causes of Action, and against Audi's Counterclaim, should be granted.

Respectfully submitted,

DATED:  August 12, 2016

*/s/ Barbara S. Wahl*
Barbara S. Wahl (VSB No. 24647)
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
202.857.6000 (Phone)
202.857.6395 (Fax)
barbara.wahl@arentfox.com

*Counsel for Plaintiff Len Stoler, Inc.*
*d/b/a Len Stoler Audi*

Of Counsel:

Russell P. McRory (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
Arent Fox LLP
1675 Broadway
New York, NY 10019
Tel: (212) 484-3942
Fax: (212) 484-3990

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2016, a true and correct copy of the foregoing

Plaintiff's Motion for Partial Summary Judgment and supporting papers were sent via ECF to the

following:

Richard Mark Dare (VSB No. 14146)
Isler Dare PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia 22182
T:  (703) 748-2690
F:  (703) 748-2695
mdare@islerdare.com

James R. Vogler
Daniel Fine
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 West Madison, Suite 3900
Chicago, Illinois 60606
T:  (312) 984-3100
F:  (312) 984-3150
jim.vogler@bfkn.com
dan.fine@bfkn.com

*Attorneys for Defendant Audi of America, Inc.*

   /s/ Barbara S. Wahl
Barbara S. Wahl (VSB No. 24647)
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
202.857.6000 (Phone)
202.857.6395 (Fax)
barbara.wahl@arentfox.com

*Counsel for Plaintiff Len Stoler, Inc.*
*d/b/a Len Stoler Audi*