# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| LEN STOLER, INC. d/b/a LEN STOLER AUDI, <br><br> Plaintiff/Counter-Defendant, <br><br> -against- <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., <br><br> Defendant/Counter-Plaintiff. | Case No. 1:15CV1659-TSE/JFA <br><br> **AUDI OF AMERICA'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS** |

Pursuant to the request of this Court at the hearing on September 2, 2016, and the accompanying Order entered September 6, 2016 (ECF #49), Defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("AoA") hereby submits its Additional Statement of Undisputed Facts in connection with Defendant's Motion for Summary Judgment.

### AOA'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

**A.**     **Facts Related to Stoler's Facilities**

1.    To have a facility that complied with its Dealer Agreement with AoA, Stoler had to meet standards set forth in AoA's Retail Capacity Guide. (Ex. 1, Retail Capacity Guide) (Ex. 2, Dealer Agreement.)

2.    Stoler's current counsel, Russell McRory, negotiated and edited the Facility Agreement with in-house counsel for AoA, Paul Ritsema, before it was finalized. (Ex. 3, Ritsema Dep. 8:18-23; 11:16-13:4.)

3.    Some of the changes Stoler's counsel requested were incorporated into the Facility Agreement. (Ex. 3, Ritsema Dep. 27:7-28:6; 29:3-30:2.)

4. The Chairman of Stoler, Leonard Stoler, was the only signatory to the Facility Agreement from Stoler. (Ex. 4, Facility Agreement.)

5. Leonard Stoler admitted he was not coerced into signing the Facility Agreement. (Ex. 5, L. Stoler Dep. 69:11-16).

6. In executing the Facility Agreement, Stoler represented that it "had legal counsel of [its] choice review this Agreement and [was] fully advised as to the legal and binding nature of this Agreement." (Ex. 4, Facility Agreement.)

7. Any Audi dealer could construct an exclusive facility and receive the exclusive level bonus, even if its MOG—a measure of market opportunity—was below 400 vehicle sales per year. (Thacker Decl. ¶ 11); (Ex. 6, R. Fischer Dep. 40:19-25); (Ex. 7, M. Balmer Dep. 48:13-49:2.); (Thacker Decl. filed previously as ECF #46-1.)

8. Some AoA dealers with MOGs below 400 did build exclusive facilities and obtained the Standards Bonus at the exclusive level. (Thacker Decl. ¶ 11.); (Thacker Decl. filed previously as ECF #46-1.)

**B.** **Facts Related to Benefits**

9. One of the benefits AoA makes available to all of its dealers is the "goodwill fund." (Balmer Decl. ¶ 2(a).)

10. From this goodwill fund, dealers can take up to $5,000 per repair to cover service costs for customers when the service is not covered by a warranty. (Balmer Decl. ¶ 2(a).)

11. AoA also makes a program available to dealers whereby AoA will split the cost with dealers of mailing service advertisements to customers (called "service-mailers"). (Balmer Decl. ¶ 2(b).)

12. Another benefit that AoA makes available to all its dealers is free next-day delivery on parts. (Balmer Decl. ¶ 2(c).)

13. AoA dealers also receive access to iAudi, a suite of web-tools that provides information, support, and applications to help dealers sell and service vehicles. (Balmer Decl. ¶ 2(d).)

14. AoA also has several training-related benefits that are generally made available to all dealers. (Balmer Decl. ¶ 2(e).)

15. For example, AoA makes a trainer available to every dealer once a month to train it sales staff. (Balmer Decl. ¶ 2(e).)

16. Additional unlimited training is made available to dealers' employees for a flat annual fee. (Balmer Decl. ¶ 2(e).)

17. AoA pays for meetings for all dealers' service and parts managers to come together and discuss best practices. (Balmer Decl. ¶ 2(e).)

18. Receipt of the benefits described in paragraphs 9-17 above does not turn on the type of facility a dealer operates. (Balmer Decl. ¶ 3.)

## C. Facts Related to Stoler's Alleged Damages

19. Stoler estimates that the amount of Standards Bonus monies it did not receive was $784,935. This amount is based on (1) the difference between the brand dedicated level bonuses Stoler did receive and exclusive level bonuses Stoler did not receive from 2013-2016 and (2) the value of the exclusive level bonuses that Stoler did not receive in 2016.[1] (Ex. 8, Roesner Supp. Rep., ¶ 5.)

20. However, Stoler has not calculated or considered whether the cost of obtaining the

---

[1] AoA disputes the admissibility of Mr. Roesner's report. However, for purposes of summary judgment, AoA considers this report to show that even if it were admissible, Stoler still cannot prove it suffered financial injury or other damages, as required by the Maryland Transportation Code.

3

Standards Bonus (at a brand dedicated level or any other level) was lower than the benefits conferred by the Standards Bonus. (Ex. 9, Lytle Rpt. ¶ 19); (Ex. 10, Roesner Dep. 106:19-107:6.)

21. To determine the economic impact of earning the Standards Bonus at the exclusive level, one would have to calculate the costs associated with earning the bonus. (Ex. 10, Roesner Dep. 27:2-30:20.)

22. Stoler has no evidence that the value of the exclusive-level bonus that other Maryland dealers received was more than the costs they incurred building and operating their exclusive facilities. (Ex. 9, Lytle Rpt. ¶¶ 19-23.)

23. When fixed costs and personnel expenses associated with earning the Standards Bonus are considered, Audi dealers that received lower amounts of Standards Bonuses did not have a "lower effective price" on vehicles purchased from Audi at wholesale. (Ex. 9, Lytle Rpt. ¶ 23.)

24. Building an exclusive facility is an expensive undertaking and, as a result, dealers need franchisor support to help offset costs. (Ex. 11, B. Stoler Dep. 44:18-45:1.)

Dated: September 28, 2016

Respectfully submitted,

    /s/ Richard Mark Dare
Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows road, Suite 650
Tysons Corner
Vienna, Virginia 22182
T: (703) 748-2690
F: (703) 748-2695
mdare@islerdare.com

    /s/ James R. Vogler
James R. Vogler (admitted *pro hac vice*)
Daniel R. Fine (admitted *pro hac vice)*
Jack O. Snyder, Jr. *(*admitted *pro hac vice)*
Emily L. Gesmundo (admitted *pro hac vice)*

4

BARAK FERRAZZANO
 KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinios 60606
T: (312) 984-3100
F: (312) 984-3150
Jim.volger@bfkn.com
Dan.fine@bfkn.com
Jack.snyder@bfkn.com
Emily.Gesmundo@bfkn.com

*Counsel for Defendant*
*Volkswagen Group of America*
*d/b/a Audi of America, Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 28th day of September, 2016, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using CM/ECF system, which will send a notification of such filing (NEF) to the following:

          Barbara S. Wahl, Esq.
          Arent Fox LLP
          1717 K Street, N.W.
          Washington, DC 20006
          Barbara.wahl@arentfox.com

          Russell P. McRory, Esq.
          Arent Fox LLP
          1675 Broadway
          New York, NY 10019
          Russell.mcrory@arentfox.com

          Sean Nicholas Clerget, Esq.
          Arent Fox LLP
          1717 K Street NW
          Washington, DC 20036-5344
          sean.clerget@arentfox.com

          /s/
          R. Mark Dare, Va. Bar No. 14146
          ISLERDARE PC
          1945 Old Gallows Road, Suite 650
          Vienna, VA 22182
          (703) 748-2690
          (703) 748-2695 (fax)
          mdare@islerdare.com
          *Counsel for Defendant*
          *Volkswagen Group of America, Inc.*
          *d/b/a Audi of America, Inc.*