# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| LEN STOLER, INC. d/b/a LEN STOLER AUDI, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) ) | Case No. 1:15CV1659-TSE/JFA |
| *v.* | ) ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

---

## AUDI OF AMERICA'S SUPPLEMENTAL OPPOSITION TO STOLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

*Of Counsel*:

Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia  22182
T: (703) 748-2690

James R. Vogler (*pro hac vice*)
Daniel R. Fine (*pro hac vice*)
Jack O. Snyder, Jr. (*pro hac vice*)
Emily L. Gesmundo (*pro hac vice*)
BARACK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Tel.: (312) 984-3100

*Counsel for Volkswagen Group of America d/b/a Audi of America, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.  Stoler's Supplemental Briefing Further Establishes That Its § 15-207(h)(3) "Price Reduction" Claim Is Non-Justiciable.................................................................... 1

II. Stoler's New § 15-207(h)(1)(i) "Offer" Claim Is Not Properly Before the Court................. 4

    A.  Stoler Impermissibly Attempts to Amend Its Complaint at Summary Judgment. ............................................................................................. 5

    B.  Stoler Is Not Entitled to Summary Judgment on Its New Claim. ................................ 8

III. Stoler's § 15-207(h)(2)(i) "Require" Claim Fails Because AoA's Facility Obligations Were Not "Require[ments]" Within the Meaning of the Transportation Code. ............................................................................................................ 9

    A.  The Obligation to Build an Exclusive Facility was a Business Decision Uniformly Applied to all Dealers. ................................................................... 9

    B.  Stoler Agreed in Its Franchise Agreement to Be Bound by AoA's Facility Standards.............................................................................................. 11

IV. Stoler's § 15-207(h)(2)(ii) "Benefit Generally Available" Claim Fails Because the Standards Bonus Was Not a Benefit Generally Available................................................ 14

V.  AoA's Affirmative Defenses Are Viable and Bar Stoler's Claims. .................................. 15

VI. Certifying Questions to Maryland's Court of Appeals Is Unnecessary............................. 18

CONCLUSION..................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Audi of Smithtown, Inc. v. Volkswagen Grp. of Am., Inc.*,
  100 A.D.3d 669 (N.Y. App. Div. 2012) ................................................................................2

*Beck Chevrolet Co. v. Gen. Motors LLC*,
  27 N.Y.3d 379 (2016) ..........................................................................................12, 13, 14

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004).................................................................................................3

*Brown v. Medtronic, Inc.*,
  628 F.3d 451 (8th Cir. 2010) ...............................................................................................2

*Carnegie Int'l Corp. v. Grant Thornton, LLP*,
  No. 24-C-00-002639, 2005 WL 851064 (Md. Cir. Ct. Apr. 6, 2005) ..................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................................................8

*Dickerson v. Longoria*,
  414 Md. 419 (2010) ............................................................................................................17

*Elmore v. Corcoran*,
  913 F.2d 170 (4th Cir. 1990) ...............................................................................................7

*Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*,
  477 F. App'x 84 (4th Cir. 2012) ........................................................................................18

*Karpel v. Inova Health Sys. Servs.*,
  134 F.3d 1222 (4th Cir. 1998) .............................................................................................6

*Maryland Hosp. v. Foreman*,
  29 Md. 524 (1868) ..............................................................................................................16

*Mathews Enter., Inc. v. Chrysler Grp. LLC*,
  No. 13-cv-BLF, 2016 WL 4269998 (N.D. Cal. Aug. 15, 2016)............................................2

*Morant v. Vaughn*,
  No. 2:08-CV-155, 2009 WL 6651941 (E.D. Va. Jan. 8, 2009) .................................................3

*Olson v. Paine, Webber, Jackson & Curtis, Inc.*,
  806 F.2d 731 (7th Cir. 1986) .............................................................................................16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..........................................................................................................3

i

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).................................................................................................2

*United States v. Cochran*,
  79 F. Supp. 3d 578 (E.D. N.C. 2015)....................................................................6

*Watkins v. Soprema, Inc.*,
  No. 1:12-CV-318-MR-DLH, 2014 WL 1281055 (W.D. N.C. Mar. 27, 2014) .......4

*White v. Keller*,
  No. 1:10CV841, 2013 WL 791008 (M.D. N.C. Mar. 4, 2013) ...............................7

*Wootton Enters., Inc. v. Subaru of Am.*,
  34 F. App'x 57 (4th Cir. 2002) ............................................................................18

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(1)..............................................................................................1

Fed. R. Civ. P. 33 .......................................................................................................7

Md. Code, Transp. § 15-207 ............................................................................. *passim*

Md. Code, Transp. § 15-213 ..................................................................................4, 8

Md. Code, Transp. § 15-214 ....................................................................................13

**OTHER AUTHORITIES**

ABA Section of Antitrust Law, Antitrust Law Developments
  501 (7th ed. 2012) .................................................................................................3

8B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 2162
  (3d ed. & supp. Apr. 2016) .....................................................................................7

## INTRODUCTION

The arguments that Stoler advances in its supplemental summary judgment brief (Dkt. No. 77) variously demonstrate that at least one of Stoler's claims is non-justiciable, attempt improperly to amend the allegations of the complaint, ignore record evidence, and misstate the law.  The stockpile of shortcomings disentitles Stoler to relief.

For these reasons, as well as the grounds that AoA presented in its originally filed opposition brief (*see generally* Dkt. No. 46 ("AoA Opposition")), Stoler's motion for partial summary judgment (Dkt. No. 43) should be denied.

## ARGUMENT

### I.  Stoler's Supplemental Briefing Further Establishes That Its § 15-207(h)(3) "Price Reduction" Claim Is Non-Justiciable[1]

Transportation Code § 15-207(h)(3) provides that, in exchange for an agreement to build or alter a sales or service facility, a "manufacturer, distributor or factory branch may not reduce the price of a motor vehicle charged to a dealer . . . ."  As AoA explained in its original opposition brief, however, Stoler's theory of liability on its Section 15-207(h)(3) claim renders its claim non-justiciable.  (AoA Opposition at 13-14.)

The gist of AoA's argument was and is as follows.  The Article III power of a federal court extends only to "cases or controversies."  When a plaintiff like Stoler argues only that it received a *benefit* based on a statutory violation, the plaintiff lacks standing:  an injury is a prerequisite to a case or controversy within the meaning of the Constitution, and a price-break is the opposite of an injury.  *Id.*  What is more, because Stoler (a) received only a price-break and (b) is no longer even an Audi dealer, Stoler's claim fails the redressability component of the standing analysis.  This Court could order no relief.  As a result, the claim is non-justiciable, this

---

[1] AoA notes that certain other Stoler claims are non-justiciable and that AoA intends to file a separate motion to dismiss such claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

Court lacks jurisdiction, and "the only function remaining to the [C]ourt is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Stoler's supplemental brief fails to engage with the pertinent arguments and legal authority that scotch its claim. Instead, the supplemental brief consumes three pages re-explaining its argument that Stoler received a benefit by signing the Facility Agreement. Indeed, Stoler goes so far as to argue that it "defies common sense" to argue that bonuses do not "have the effect of 'reducing the price of a motor vehicle.'" (Pl. Supp. Br. at 10.)[2] Stoler cites no injury caused by its decision to ink the Facility Agreement, and affirmatively argues AoA's alleged code violation took Stoler from a net operating loss to a net profit. (Pl. Supp. Br. at 11-12.) That argument is fatal. *See also Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) (net loss required to establish standing).

These (renewed) arguments by Stoler only underscore that its "price reduction" claim is non-justiciable. The cases that Stoler's supplemental opposition relies upon help to illustrate the point. In each of the cases that Stoler cites where a plaintiff brought a price discrimination claim, the plaintiff argued that it was injured because price reductions given to *others* put the plaintiff at a competitive disadvantage. *See Audi of Smithtown, Inc. v. Volkswagen Grp. of Am., Inc.*, 100 A.D.3d 669, 670 (N.Y. App. Div. 2012) (existing dealers filed suit alleging that AoA program "constituted unlawful price discrimination in favor of newly franchised dealers"); *Mathews Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-BLF, 2016 WL 4269998, at *1 (N.D. Cal.

---

[2] That is a straw-man argument in all events. AoA does not dispute that a bonus may (in circumstances that do not exist in this case) have the *effect* of reducing the price of a motor vehicle. AoA does dispute, among other things, that the Maryland Transportation Code regulates bonus payments that "have the effect of reducing the price of a motor vehicle"—*i.e.*, that Transportation Code § 15-207(h)(3) is a price discrimination statute that regulates indirect price discrimination. (*See* AoA Opposition at 21-24). Stoler's supplemental brief (still and again) fails to grapple with the arguments that AoA has actually made.

Aug. 15, 2016) ("Plaintiff . . . alleges that Defendant . . . offered incentive payments to other [Chrysler] dealers . . . but not to" Plaintiff).  That is a basic feature of a price discrimination claim, *e.g.,* ABA Section of Antitrust Law, Antitrust Law Developments 501 (7th ed. 2012) ("[I]n secondary line cases, there must be proof of injury . . . arising out of compared sales involving the allegedly injured buyer and its competitors."), and the competitive injury is what creates standing.  *See also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) ("[T]o have standing to bring a [federal price discrimination] claim, a private plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent.") (citation and quotation marks omitted).

By flipping this basic feature of a price discrimination claim on its head—suing based on a benefit rather than a competitive disadvantage—Stoler has rendered its claim non-justiciable. The only potential harm to Stoler is the (alleged) fact of a Transportation Code violation.  But as the Supreme Court explained this past term in the *Spokeo* case, a bare allegation of a statutory violation "divorced from any concrete harm" cannot satisfy the injury-in-fact requirement of Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Indeed, "[t]he 'proper analysis of standing focuses on whether plaintiff suffered an actual injury, not on whether a statute was violated.'"  *Morant v. Vaughn*, No. 2:08-CV-155, 2009 WL 6651941, at *3 (E.D. Va. Jan. 8, 2009), *aff'd,* 330 F. App'x 36 (4th Cir. 2009).

In sum, because Stoler alleges that it profited from AoA's alleged code violation, Stoler's Section 15-207(h)(3) claim is not predicated on an injury.  Likewise, because Stoler (still) fails to explain how a ruling in its favor could satisfy the redressability component of standing, the claim should be dismissed as non-justiciable.

Even if Stoler could somehow surmount the Article III barrier to its claim being heard, its "price reduction" claim would still founder on the merits. This is so because a threshold requirement for bringing suit under the Maryland Transportation Code is to establish "financial injury or other damage." Md. Code, Transp. § 15-213 (providing a cause of action only to persons who suffer financial injury or other damage as a result of a code violation). In its latest summary judgment brief, Stoler affirmatively argues that AoA's alleged code violation took Stoler from a net operating loss to being profitable. (Pl. Supp. Br. at 11-12.) The argument fatally undermines its own claim. Even were the claim justiciable, it would fail because Stoler cannot establish—and indeed has not attempted to establish—financial injury or other damage within the meaning of Transportation Code § 15-213.

## II.    Stoler's New § 15-207(h)(1)(i) "Offer" Claim Is Not Properly Before the Court.

Transportation Code § 15-207(h)(1)(i) provides that "[a]ny consumer rebates, dealer incentives, price or interest rate reductions, or finance terms that a manufacturer, distributor, or factory branch offers or advertises . . . shall be offered to all dealers of the same line make." For the reasons set forth in AoA's opening brief, Stoler's "offer" claim is deficient. (AoA Opposition at 11-12, 14-15.)

To avoid this result, Stoler's "supplemental" opposition abandons the theory of liability that it actually pled in this lawsuit and presents an entirely new offering to this Court. Changing theories of liability, however, ignores the well-worn admonition that a plaintiff may not save a claim at summary judgment by "changing horses in mid-stream." *Watkins v. Soprema, Inc.*, No. 1:12-CV-318-MR-DLH, 2014 WL 1281055, at *6 (W.D. N.C. Mar. 27, 2014). Even if the new claim were properly before the Court, Stoler still fails to establish that it is entitled to summary judgment on it.

4

## A.      Stoler Impermissibly Attempts to Amend Its Complaint at Summary Judgment.

Since the beginning of this litigation, Stoler's claim under Section 15-207(h)(1)(i) has always been that AoA did not "offer" Stoler the exclusive level bonus, based on the notion that AoA had a "two tiered" system that allowed "brand dedicated" dealers to earn Standards Bonus payments at one level (2.35% of adjusted MSRP) and allowed "exclusive" dealers to earn Standards Bonus payments at a higher level (3.75% of adjusted MSRP).  There can be no doubt on this score.  Stoler has repeated this theory in pleadings, discovery, filings with this Court, and at oral argument:

- The Complaint alleges that AoA violated Maryland law by "fail[ing] to pay Plaintiff the full amount of bonus monies on the ground that Plaintiff does not have an exclusive Audi facility."  (Compl. ¶ 1.)

- The Complaint alleges that "Audi breached the Maryland Transportation Code by only making reduced levels of the Standards Bonus available to Len Stoler than are available to other Audi franchisees on the ground that Len Stoler does not have an exclusive Audi facility."  (Compl. ¶ 30.)

- In a response to AoA's Interrogatory that asked Stoler to "[i]dentify each statutory violation that AoA committed[,]" Stoler answered only that "Audi demanded Stoler enter into the Facility Agreement and construct an exclusive facility, threatened to withhold Standards Bonus if Stoler did not do so, and then actually withheld Standards Bonus when Stoler did not start construction of the exclusive facility on time."  (Supp. Ex. 1, Stoler Rog Resp. No. 17 at 9.)

- Stoler specifically identified the matter in the bullet point above, and only the matter in the bullet point above, as the factual basis for its Section 15-207(h)(1)(i) claim.  (*Id.*)

- In its summary judgment motion, Stoler argued that "[AoA] has admitted it engaged in a two-tiered bonus program, which by definition means that [AoA] offered rebates, incentives, or price reductions to only *some* of its Audi dealers."  (Stoler Opening Br. at 7.)

- Stoler further argued at summary judgment that "[u]nder [AoA]'s volume planning standards, smaller volume dealers like Stoler can only receive the lower tier Brand Dedicated Standards Bonus."  (Stoler Opening Br. at 7.)

- At the parties' hearing on Stoler's original motion for summary judgment, Stoler argued to the Court that AoA violated § 15-207(h)(1) because Stoler "did not receive and was not offered the higher bonus as was offered and received by exclusive dealers." (Supp. Ex. 2, 9-2-16 Hrg. Tr. at 15:11-16.)

Stoler now asserts—for the first time in its supplemental brief in support of its summary judgment motion—a completely new theory of liability. Stoler's new theory is that AoA violated Section 15-207(h)(1)(i) because it offered the Standards Bonus at the exclusive level to *new* Audi dealers who agreed to build exclusive facilities, even if the new Audi dealers had not actually begun construction. (Pl. Supp. Br. at 3-4.) The new dealers were eligible for the exclusive-level bonus upon signing a dealer agreement, whereas the existing dealers were eligible only after breaking ground on the facility. *Id.* This new theory was never pled, is incompatible with Stoler's Interrogatory answers in which Stoler was required to state the basis for its claim, and is incompatible with Stoler's previous summary judgment argument. In short, Stoler is seeking to advance a completely new theory that has been created not just for summary judgment, but in the *middle* of summary judgment. The Federal Rules of Civil Procedure do not permit Stoler to do so.

Even under the liberal standards of the Federal Rules "a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (affirming summary judgment on claim not properly pled). The purpose of this rule is to provide defendants with fair notice of plaintiffs' claims and the factual bases on which they rest. *Id. see also United States v. Cochran*, 79 F. Supp. 3d 578, 583 (E.D. N.C. 2015) ("A properly pleaded complaint provides to an opponent 'illumination as to the substantive theory under which [plaintiff] [i]s proceeding, which is the function of pleadings under the Federal Rules.'"). And when factual allegations and theories of liability are not

6

properly pled, the Fourth Circuit has held that it is error for a trial court to consider them. *See Elmore v. Corcoran*, 913 F.2d 170, 173 (4th Cir. 1990) (district court abused its discretion in considering theory not properly pled).

In like vein, Stoler's answers to AoA's interrogatory (which asked Stoler to identify the basis for its claim) narrowed the dispute in a manner that excludes Stoler's new claim. *See* 8B Charles Alan Wright, *et al.*, FEDERAL PRACTICE & PROCEDURE § 2162 (3d ed. & supp. Apr. 2016) ("As is true of the other discovery rules, Rule 33 is intended to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial.").

Stoler's attempt to change theories arose only after the Court indicated at the previous summary judgment hearing that the theory of Section 15-207(h)(1)(i) that Stoler actually pled and litigated was not gaining traction with the Court. In response to opposing counsel's oral presentation of the "offer" argument that Stoler pled and litigated, the Court stated, "I think it may be a mistake for you to rely only on that [provision], because I don't see any reason why they can't say, 'You get a higher bonus if all of your salespeople wear red clothes,' or 'if you build another facility.' . . . there is nothing in the statute about you can't make offers that some people can't accept or that some people don't want." (Supp. Ex. 2, 9-2-16 Hrg. Tr. at 18:25-19:4; 19:19-21.)

Because Stoler's new theory was neither pled nor litigated, the Court should disregard it. "[S]ummary judgment is not the proper vehicle to raise new claims . . . ." *White v. Keller*, No. 1:10CV841, 2013 WL 791008, at *3 (M.D. N.C. Mar. 4, 2013). What is more, if Stoler is permitted to inject this new claim into the litigation, AoA is entitled to the procedural protections guaranteed by the Federal Rules of Civil Procedure. AoA should have the right to answer the new claim, plead defenses to the new claim, and take full discovery on Stoler's new claim and

any new defenses that AoA asserts.  It would prejudice AoA to permit Stoler to thrust a new claim into the litigation at summary judgment without permitting AoA to develop evidence that may eliminate Stoler's entitlement to relief.

### B.    Stoler Is Not Entitled to Summary Judgment on Its New Claim.

Even if Stoler's argument were properly before the Court, its new claim would still fail on the limited record that is before the Court.  As a plaintiff moving for summary judgment, Stoler is required to establish each element of its claim with evidence sufficient to entitle it to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  As noted in AoA's opening brief, Section 15-213 of the Maryland Transportation Code provides that "financial injury or other damage" is a threshold requirement for bringing a suit based on an alleged Transportation Code violation.  (AoA Opposition at 11-14.)

In the context of Stoler's newly announced claim, Section 15-213 would require Stoler to establish at the liability phase that paying exclusive-level Standards Bonus payments to a new Audi dealer caused "financial injury or other damage" to Stoler.  (*See* AoA Opposition at 11 (collecting authorities that teach "if there is no liability without damage and damages are in dispute, summary judgment should not be granted.").)

Stoler, however, has failed to offer any evidence of financial injury or other damage on its newly announced claim.  The only record evidence on this score would defeat Stoler's claim. Even crediting Stoler's new theory, the only new Audi dealer that Stoler identifies as having received the exclusive-level Standards bonus at a time when Stoler was still an Audi dealer was Audi Frederick.  Yet Stoler President Barry Stoler stated that Frederick was not one of Stoler's competitors.  (Supp. Ex. 3, B. Stoler Dep. at 107:8-15 ("only on a rare circumstance or rare occasion would we ever compete with" dealers other than "Hunt Valley, Criswell, and Silver

Spring")).)  If Stoler and Audi Frederick were not competing, then Stoler could not have been injured by Frederick's receipt of Standards Bonus payments at any level.

In sum, the Court should not entertain Stoler's new "offer" claim.  If the Court were to entertain the claim, it should not do so before AoA is permitted to undertake complete discovery on this new, unpled and unlitigated claim.  And even if Stoler's new claim were properly before the Court, Stoler would still fail to establish that it is entitled to summary judgment.

III.   **Stoler's § 15-207(h)(2)(i) "Require" Claim Fails Because AoA's Facility Obligations Were Not "Require[ments]" Within the Meaning of the Transportation Code.**

Section 15-207(h)(2)(i) makes it unlawful for a distributor to "[r]equire a dealer to alter or replace an existing dealership facility[.]"  In its opening brief, Stoler did not apprise this Court that "require" has a statutory definition.  The statutory definition excludes "a provision . . . previously agreed to by a dealer in a franchise agreement" and "business decisions . . . which are uniformly applied to all Maryland dealers" of a distributor.  Md. Code, Transp. § 15-207(a)(3).

In its supplemental brief, Stoler argues that the statutory carve-outs from the word "require" do not apply to AoA's decision to call upon every Maryland dealer to operate from an exclusive facility.  Stoler's arguments are unconvincing.

A.     **The Obligation to Build an Exclusive Facility was a Business Decision Uniformly Applied to all Dealers.**

Stoler asserts in its supplemental brief that "AoA's conduct does not fall under the safe harbor provision found in the definition of 'require'" because "Audi has not 'uniformly applied' its requirement that Audi dealers become exclusive to all Maryland dealers."  (Pl. Supp. Br. at 6.) Stoler's claim fails for two reasons:  (1) AoA has a process (called a "MOG") that it uniformly applies to all dealers to determine whether they are called upon to operate out of exclusive facilities, and, even if this were not the relevant inquiry, (2) all Maryland Audi dealers have as a factual matter been called upon to operate from exclusive facilities.

First, AoA made a business decision that customers in markets that can support more than 400 new Audi vehicles per year would be better served by exclusive dealers.  AoA then developed a process for determining which markets could support 400 or more units per year, called a "MOG."[3]  As a part of this process, AoA calculates every dealer's MOG in the same two ways, and every dealer's MOG is set based on whichever calculation results in the higher number.  (Dkt. No. 52, JSUF ¶ 31.)  Every dealer whose MOG meets or exceeds the 400-unit threshold is called upon to operate out of an exclusive facility.  (*Id.* at ¶ 60.)  Thus, it is undisputed that AoA developed a uniform process for determining which dealers must have an exclusive facility and then applied that process to all Maryland dealers.  This is the relevant inquiry.

However, even if the relevant inquiry were whether AoA actually called upon all of its dealers to operate out of exclusive facilities, the result would be the same:  all Maryland dealers have actually been called upon to operate out of exclusive facilities.  (*See* Dkt. No. 46-1, Thacker Decl. ¶ 12); (Dkt. No. 47, Pl. Reply Br. at ¶ 1 (Stoler does not dispute this fact.).)  Put another way, in both theory and in practice, AoA has called upon every Maryland dealer to operate from an exclusive facility.  It is self-evident that an obligation that applies to 100-percent of AoA's dealer network in Maryland is "uniform" within the meaning of Maryland's statute.

Stoler's arguments about the MOG being "variable" and "arbitrary" are red herrings and have nothing to do with the claims that are before the court.  (Pl. Supp. Br. at 6-8.)  Section 15-207(h)(2)(i) requires only that a distributor's business decision be applied uniformly, and AoA's business decision was uniform.  If Stoler believed that the MOG calculations were unfair or

---

[3] The acronym stands for Market Opportunity Guide.

unreasonable, it could have sought relief under Transportation Code § 15-207(e)(2)(ii).[4] However, Stoler did not do so.  If Stoler now wishes to bring such a claim and explain why it was not brought sooner, Stoler should file a motion for leave to amend its complaint.  Attempting to adduce yet another un-brought claim on summary judgment, however, is improper.

In sum, because Stoler's obligation to build an exclusive facility arose from a uniform business practice applied to all Maryland dealers, Stoler's motion for summary judgment on its § 15-207(h)(2)(i) claim should be denied.

### B.   Stoler Agreed in Its Franchise Agreement to Be Bound by AoA's Facility Standards.

AoA did not unlawfully "require" Stoler to build an exclusive facility because the obligation to build an exclusive facility was based on "a provision . . . previously agreed to by a dealer in a franchise agreement."  Md. Code, Transp. § 15-207(a)(3).

Stoler's Dealer Agreement incorporated several of AoA's standards and guides by reference, including the Standard Provisions and the Retail Capacity Guide, and stated that the incorporated documents "are part of this Agreement."  (Dkt. No. 52, JSUF ¶ 45.)  Under the Retail Capacity Guide, a dealer with a MOG equal to or greater than 400 had to build an exclusive facility.  (*Id.* at ¶ 14.)  At some point, Stoler's MOG grew to exceed the 400-unit threshold.  (*Id.* at ¶ 15.)  As such, according to the standards laid out in the Retail Capacity Guide, Stoler was obligated to build an exclusive facility.  (*Id.* at ¶ 17.)  Thus, AoA did not unlawfully require Stoler to build an exclusive facility under § 15-207(h)(2)(i), as Stoler previously agreed to comply with the Retail Capacity Guide in its Dealer Agreement.

---

[4] That provision provides in pertinent part: "A dealer that claims that the application of a . . . program for measuring dealership performance is unfair or unreasonable due to demographic characteristics of the population in the dealer's assigned market area, including car and truck preferences of consumers . . . may file a claim . . . to determine whether the application of the . . . program is unfair or unreasonable under this paragraph."

Stoler tries to avoid this result by arguing that the Retail Capacity Guide now in existence was not in existence in 1997. (Pl. Supp. Br. at 5-6.) But that argument ignores the text of the Standard Provisions that were in effect in 1997. Those Standards, explicitly incorporated into Stoler's Dealer Agreement, provided that "Dealer's Premises will conform to the requirements of this Agreement, the Operating Standards and *such other standards as Audi may prescribe from time to time . . . .*" (*See* Dkt. No. 52, JSUF ¶¶ 45-46 (emphasis added).) Thus, the current version of the Retail Capacity Guide is exactly what the Standard Provisions from 1997 specified. (*See id.* at ¶¶ 14, 31.)

Because the obligation to build an exclusive facility is the result of "a provision . . . previously agreed to by a dealer in a franchise agreement," Md. Code, Transp. § 15-207(a)(3), Stoler was not, within the meaning of the Maryland Transportation Code, unlawfully "required" to build an exclusive facility. Stoler was merely held to the benefit of its bargain, which Maryland law does not outlaw.

Stoler cannot avoid this result by relying upon the New York Court of Appeals decision in *Beck Chevrolet Co. v. Gen. Motors LLC*, 27 N.Y.3d 379, *reargument denied,* 27 N.Y.3d 1187 (2016). In *Beck*, the New York Court of Appeals held only that it would violate New York law to alter a dealer's area of responsibility without complying with the provisions of New York law that applied to changes in a dealer's area of responsibility. *Id.* at 394-95. The case has nothing to do with facilities obligations. Yet, Stoler argues that *Beck* supports the proposition that AoA could not reserve in its dealer agreement with Stoler the right to update its facility-related standards. (Pl. Supp. Br. at 6.) Moreover, *Beck* does not support Stoler's argument for at least three additional reasons.

First, *Beck* is a New York case interpreting New York law, not the Maryland Transportation Code. *Beck*, 27 N.Y.3d 379. Stoler has not even attempted to argue that Maryland courts look to New York law in construing the Transportation Code. At the previous oral argument, Stoler's counsel conceded that Maryland's code was "sui generis" and unrelated to New York law:

| THE COURT: | What state statute did Maryland base its statute on, or did it do it sui generis, if you know? |
|---|---|
| ATTORNEY WAHL: | My understanding is that it is sui generis. |
| THE COURT: | All right. Now, I know there are other statutes that are dissimilar from it, one in New York, in particular, but let's put that to the side. |

(Supp. Ex. 4, 9-2-16 Hrg. Tr. at 5:9-16.) Broad appeals to *Beck*, particularly at a high level of abstraction, should have no bearing on the questions before the Court.

Second (and relatedly), the New York statute at issue in *Beck* is worded dissimilarly to § 15-207(h)(2)(i) of the Maryland Transportation Code in an important way: The New York statute explicitly provides that distributors cannot modify their franchise agreements with dealers, even if dealers agree to future modifications in their franchise agreements. N.Y. Veh. & Traffic L. § 463(2)(ff)(1) ("It shall be unlawful for any franchisor, *notwithstanding the terms of any franchise contract* . . . [t]o modify the [franchise contract] . . ."). *Id.* at 395 (emphasis added). The Maryland Transportation Code contains no similar restriction on the definition of "require," although the General Assembly did include such notwithstanding-the-terms-of-the-franchise-agreement language elsewhere. *See* Md. Code, Transp. § 15-214. In contrast, Section 15-207(h) explicitly provides that dealers *can* be obligated to build exclusive facilities, so long as the obligation arises out of "a *provision* . . . previously agreed to by a dealer in a franchise agreement . . ." Md. Code, Transp. § 15-207(h)(2)(i) (emphasis added).

13

*Third,* even in *Beck,* the New York Court of Appeals was cautious to explain that its holding reached only decisions that a manufacturer made that would have an adverse impact on a dealer. Thus, the *Beck* Court held that a revision to a sales area does not categorically violate New York law. 53 N.E.3d at 396-97. And in broad language, the *Beck* Court reaffirmed that distributors have considerable discretion where it comes to business judgments designed to grow a brand, including as those judgments relate to the quality of the dealerships where new cars are sold: "Decisions about how best to improve the quality of dealerships and increase dealer sales involve business judgments rightly left to franchisors, and not the courts." *Id.* at 394. Thus, even if *Beck* were applicable to the matters before the Court (it is not), the case ultimately supports AoA.

In sum, because Stoler agreed to be bound both by the Retail Capacity Guide and such facilities-related standards as AoA prescribed from time to time, Stoler's § 15-207(h)(2)(i) claim fails. Even if that were not the case, AoA has in fact called upon all Maryland Audi dealers to operate from exclusive facilities. These facts demonstrate that Stoler is not entitled to summary judgment on its "require" claim under Transportation Code § 15-207(h)(2)(i).

## IV. Stoler's § 15-207(h)(2)(ii) "Benefit Generally Available" Claim Fails Because the Standards Bonus Was Not a Benefit Generally Available.

Transportation Code § 15-207(h)(2)(ii) provides generally that a distributor may not deny or threaten to deny a "benefit generally available to all dealers for a dealer's failure to alter or replace an existing dealership facility."

In its supplemental brief, Stoler argues that AoA is trapped by AoA's interpretation of the Maryland Transportation Code. Stoler takes this position by making two "if, then" arguments and asserting that one or the other must be true. Stoler argues as follows: (1) if the Standards Bonus was "offered" to all dealers, then it was a "benefit generally available" that AoA denied to

Stoler; or (2) if the Standards Bonus was not a "benefit generally available," then it was not "offered" to all dealers.  (Pl. Supp. Br. at 8-9.)  Stoler's logic does not hold up.

Stoler's entire argument is based on a false (and undefended) equivalence: Stoler conflates "benefits generally available" with "incentives."  That is, Stoler assumes that an incentive, the Standards Bonus here, qualifies as a "benefit generally available" under the Transportation Code.  But under well-established principles of statutory construction that AoA set out in its opening brief (AoA Opposition at 17-21) and for factual reasons set out in AoA's separate motion for summary judgment on this claim (AoA Summ. J. Br. at 8-10 (identifying several benefits that are "generally available" to Audi dealers)), incentives should not be synonymous with "benefits generally available."

Among other problems with Stoler's position, if an incentive is synonymous with a benefit generally available, then a manufacturer would be permitted under the Transportation Code to offer facilities-related incentives, but never permitted to withdraw them where a dealer fails to earn the incentive.  (AoA Opposition at 17-21.)  The plain language and structure of the Transportation Code do not support that bizarre result and there is no evidence that the General Assembly intended it.  Although AoA has raised this flaw previously (*id.*) Stoler has repeatedly failed to offer a cogent explanation and instead relied only on the flawed "if-then" argument above.  (Pl. Opening Br. at 8 & n.1; Pl. Supp. Br. at 8-9.)

Therefore, the Court should deny Stoler's motion for partial summary judgment on its "benefit generally available" claim.

## V.   AoA's Affirmative Defenses Are Viable and Bar Stoler's Claims.

Stoler asserts that AoA's equitable defenses are based on the Facility Agreement, and a party cannot assert equitable defenses when its relationship with the opposing party is governed

by a contract.  (Pl. Supp. Br. at 12-13.)  According to Stoler, "fraudulent or illegal conduct" must be the basis of equitable defenses.  (*Id.* at 13.)  Stoler's argument suffers from several flaws.

First, Stoler cannot have it both ways: it cannot argue on the one hand that the Facility Agreement is null and void (*id.* at 12), and on the other hand that AoA's equitable defenses are barred because the parties' relationship is governed by the Facility Agreement.  (*Id.* at 13.) Either the Facility Agreement is lawful and governs the parties' relationship (as AoA contends), or AoA is entitled to assert its equitable defenses against Stoler.  *See Maryland Hosp. v. Foreman*, 29 Md. 524, 531 (1868) (if a contract is unlawful, a party to it may assert equitable defenses against the other party); *see also Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 743-44 (7th Cir. 1986) (Posner, J.) (where a contract is "illegal" it may nonetheless be susceptible to the equitable remedy of reformation).

Second, AoA's equitable defenses are not based solely on the Facility Agreement but also the misrepresentations Stoler made in the Facility Agreement.  (Supp. Ex. 5, Thacker 30(b)(6) Dep. 104:1-107:17.)  Because of these misrepresentations, AoA's *in pari delicto* defense defeats Stoler's claims.

*In pari delicto* "is a corollary of the clean-hands doctrine.  It means that where the wrong of one party equals that of the other, the court will leave the parties where it found them, effectively placing the defendant in the favored position."  *Carnegie Int'l Corp. v. Grant Thornton, LLP*, No. 24-C-00-002639, 2005 WL 851064, at *32 (Md. Cir. Ct. Apr. 6, 2005); *see also Maryland Hosp.*, 29 Md. at 531 (if parties to an illegal contract stand *in pari delicto,* the court will leave the parties as it found them).  Here, even assuming that AoA violated the Transportation Code (which it did not), Stoler stands in at least equal fault to AoA.

In the Facility Agreement, Stoler represented to AoA that "*Dealer and its legal counsel have reviewed the laws applying to dealer/manufacturer relations. . .*" (Dkt. No. 65, ASUF ¶¶ 2-3.); (Dkt. No. 52, JSUF ¶ 47 (emphasis added)).  Stoler also represented and agreed that "[b]oth parties have had legal counsel of their choice review this Agreement *and are fully advised as to the legal and binding nature of this Agreement*." (Dkt. No. 52, JSUF ¶ 48 (emphasis added).)

Stoler now admits that the representations made in the Facility Agreement were fraudulent.  In the course of discovery, Stoler has revealed that "[n]either Stoler nor its counsel undertook an evaluation of the legality of the Facility Agreement prior to signing.  Stoler therefore had no understanding of the legality of the Facility Agreement prior to signing." (Supp. Ex. 1, Stoler Interrogatory Responses No. 23.)  In other words, Stoler made a misrepresentation when it signed the Facility Agreement.  Under Stoler's own authority, the fraudulent and inequitable conduct insulates AoA from liability under the Transportation Code. *Dickerson v. Longoria*, 414 Md. 419, 455 (2010).[5]

Stoler's fraudulent misrepresentation and inequitable conduct in connection with the Facility Agreement allowed Stoler to reap bonus-related benefits of the Facility Agreement for an entire year, while AoA received nothing in return.  (*See* Dkt. No. 52, JSUF ¶¶ 20-24, 53.)  Those facts are sufficient to make out a colorable *in pari delicto* defense before a finder of fact. Therefore, Stoler's motion for summary judgment should be denied.

---

[5] Stoler incorrectly states that *Dickerson* teaches that "some sort of 'fraudulent or illegal conduct' is 'required before a court may apply the doctrine of unclean hands.'" (Pl. Supp. Br. at 13.)  The case says no such thing.  *Dickerson* states that "[t]he [un]clean hands doctrine states that 'courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, *or inequitable conduct* in the matter with relation to which he seeks assistance." 414 Md. 419 at 455 (emphasis added).

## VI.     Certifying Questions to Maryland's Court of Appeals Is Unnecessary.

The language and structure of the Transportation Code provisions at issue in this litigation are susceptible to judicial interpretation by means of well-established canons of interpretation.  This Court is fully capable of interpreting the Transportation Code.  *See, e.g.*, *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 477 F. App'x 84 (4th Cir. 2012) (interpreting the Transportation Code); *Wootton Enters., Inc. v. Subaru of Am.*, 34 F. App'x 57, 62-63 (4th Cir. 2002) (same).

If, however, the Court considers certifying any questions to Maryland's Court of Appeals, AoA respectfully requests that the Court first consider Stoler's obligation to prove damages.  AoA has raised Stoler's lack of injury and inability to establish damages in both AoA's opposition to Stoler's motion for summary judgment and in its separate motion for summary judgment.  It would waste judicial resources to certify questions to the highest court in Maryland as to claims that cannot succeed under any interpretation of the Transportation Code.

### CONCLUSION

For the foregoing reasons, and those set out in AoA's originally filed opposition, Stoler's Motion for Partial Summary Judgment should be denied in its entirety.

_____/s/Richard Mark Dare_____
Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows road, Suite 650
Tysons Corner
Vienna, Virginia  22182
T: (703) 748-2690
F: (703) 748-2695
mdare@islerdare.com

_____/s/James R. Vogler____
James R. Vogler (admitted *pro hac vice*)
Daniel R. Fine (admitted *pro hac vice*)
Jack O. Snyder, Jr. *(*admitted *pro hac vice*)
Emily L. Gesmundo (admitted *pro hac vice*)

18

BARAK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinios 60606
T: (312) 984-3100
F: (312) 984-3150
Jim.volger@bfkn.com
Dan.fine@bfkn.com
Jack.snyder@bfkn.com
Emily.Gesmundo@bfkn.com

*Counsel for Defendant*
*Volkswagen Group of America*
*d/b/a Audi of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of October, 2016, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using CM/ECF system, which will send a notification of such filing (NEF) to the following:

Barbara S. Wahl, Esq.
Arent Fox LLP
1717 K Street, N.W.
Washington, DC  20006
barbara.wahl@arentfox.com

Russell P. McRory, Esq.
Arent Fox LLP
1675 Broadway
New York, NY 10019
russell.mcrory@arentfox.com

Sean Nicholas Clerget, Esq.
Arent Fox LLP
1717 K Street NW
Washington, DC 20036-5344
sean.clerget@arentfox.com

 /s/
R. Mark Dare, Va. Bar No. 14146
ISLERDARE PC
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
(703) 748-2690
(703) 748-2695 (fax)
mdare@islerdare.com
*Counsel for Defendant*
*Volkswagen Group of America, Inc.*
*d/b/a Audi of America, Inc.*

20