# SUPPLEMENTAL EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
(Alexandria Division)

| | |
|---|---|
| LEN STOLER, INC. d/b/a LEN STOLER AUDI,<br><br>Plaintiff,<br><br>-against-<br><br>VOLKSWAGEN GROUP OF AMERICA,<br>INC. d/b/a AUDI OF AMERICA, INC.,<br><br>Defendant. | Case No. 1:15CV1659-TSE/JFA<br><br>**PLAINTIFF'S ANSWERS TO DEFENDANT AUDI OF AMERICA'S FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP") and Local Civil Rule 26 of the United States District Court for the Eastern District of Virginia ("Local Rules"), Plaintiff Len Stoler, Inc. d/b/a Len Stoler Audi ("Stoler" or "Plaintiff"), hereby answers Defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc.'s ("Audi" or "Defendant") First Set of Interrogatories to Plaintiff ("Interrogatories"), dated August 9, 2016, in connection the above-captioned action. In doing so, Plaintiff does not waive, but on the contrary preserves:

(a) all questions as to the competency, relevancy, materiality, privilege and admissibility as evidence for any purpose, at any trial or hearing in this case or in any related or subsequent action or proceeding, of any information disclosed or documents produced hereunder or the subject matter thereof;

(b) the right to object on any ground to the use of any of the information disclosed herein or any of the documents produced hereunder or the subject matter thereof at any trial or hearing in this case or in any related or subsequent action or proceeding;

(c)     the right to object on any ground at any time to any other set of interrogatories and/or other discovery propounded to Plaintiff; and

(d)     the right to amend and/or supplement the information disclosed herein or the production of documents served hereunder.

In providing the following responses, Plaintiff have made a reasonable effort to provide the information requested. The following responses are based upon such information and documents as are reasonably available to Plaintiff and susceptible to retrieval through reasonable efforts.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all persons who provided you information or that you consulted in preparing your answers to these Interrogatories, to AoA's First Set of Requests for Production of Documents, and to AoA's Second Set of Requests for Production of Documents.

**ANSWER:**     Subject to and without waiving of its objections, Plaintiff responds as follows: Len Stoler, Barry Stoler, David Leibowitz and Russell McRory.

**INTERROGATORY NO. 2:** Identify the following persons for each year from 2010 to the present:

- Your general manager(s) for your dealership operations;
- Your new vehicle sales manager(s) and general sales manager(s);
- The person(s) chiefly responsible for managing Stoler's Audi dealership's facility and ensuring its compliance with facility requirements specified by AoA;
- The person(s) chiefly responsible for any effort or plan by Stoler to relocate its Audi dealership or to construct a new facility; and
- Your marketing and digital marketing managers.

**ANSWER:** Plaintiff did not have a general manager until late 2015 and through April 2016. Dave McBreatry was the general manager during that time frame. Plaintiff had the following general sales managers:

(1) John Corona – November 2010 through July 2011
(2) Shannon Barham – November 2010 – January 2013 (Sales Manager)
(3) Steve Prescott – January 2013 – January 2014
(4) Anthony Zegarelli – March 2015 – December 2015
(5) Neil Gillies – January 2016 – April 2016

Plaintiff had/has the following marketing and digital managers:

(1) Karla Gulesarian – January 2010 – November 2012
(2) Jared Leibowitz – December 2012 – May 2015
(3) Craig Farmer – May 2015 – Present

**INTERROGATORY NO. 3:** Provide a complete explanation of why Stoler entered into the Facility Agreement.

**ANSWER:**

In 2014, Audi informed Stoler that Audi had calculated Stoler's Market Opportunity Guide to be over 400 units per year, and therefore Stoler was required to construct and operate its Audi franchise out of an exclusive facility. Further, Audi informed Stoler that Stoler would no longer receive the Brand Dedicated Standards Bonus beginning January 2015 if Stoler did not sign the Facility Agreement, and that Stoler would lose all Standards Bonus by December 2015 if it did not commence construction of an exclusive facility. Finally, Audi informed Stoler that moving Porsche out of the dualled facility would not satisfy the Exclusive facility requirements, as Audi had calculated Stoler as needing roughly 35,000 square feet of space.

In light of Audi's demands and the economic losses Stoler would face should it lose the Standards Bonus, Stoler felt it had no choice but to sign the Facility Agreement.

**INTERROGATORY NO. 4:** Provide a complete explanation of why Stoler decided to sell its Audi dealership assets, including without limitation, why it entered into the transaction for such sale and accept the terms reflected in such transaction, why it decided to transact with the purchaser of its assets, and why it refused to accept AoA's assistance in obtaining a higher price.

**ANSWER:**

In September 2015, Stoler received a notice of breach letter from Audi, indicating that Stoler was deficient in its sales performance and its facility obligations. In November 2015, Audi (and its parent company, Volkswagen AG), were further implicated in the wide-ranging and years long scheme to deceive the U.S. Government and the American consumer, known as the "diesel defeat device" scandal, that had previously primarily involved the Volkswagen brand. That Audi was more deeply involved in the scandal reduced Stoler's confidence in the Audi brand.

On December 1, 2015, Len and Barry Stoler met with Mark Del Rosso and Jeremy Meyer at Audi's offices in Herndon, Virginia. At that meeting, Mr. Del Rosso made it abundantly clear Audi wanted to terminate Stoler. Stoler only had until the end of March 2016 to cure both its sales performance issues and its facility issues under the Notice of Breach issued in September 2015. Curing the breach in such a short time frame was impossible. Finally, Mr. Del Rosso made it clear that Stoler would receive <u>no</u> Standards Bonus come January 1, 2016, making continued franchise operations a losing proposition.

Between the threat of termination, the elimination of bonus funds, and the reduced confidence in the Audi brand owing to the diesel defeat device scandal, Stoler decided to sell its Audi franchise assets as quickly as possible. After a short negotiation, Stoler had a deal in principle to sell the Audi franchise for the cost of assets plus $5,000,000 in goodwill (or "blue sky") to Priority One Automotive. Priority One also represented that it had an empty storefront into which it could immediately move Stoler's Audi franchise. This solved the lack of a real

estate solution in the deal that may have been a problem to any other potential buyer. Other potential buyers would have to locate a parcel of real estate with the proper zoning, or go through a lengthy rezoning process. And those buyers would have to do all of that before ultimately constructing the exclusive facility that Audi insists the market requires.

Stoler did not refuse Audi's assistance in obtaining a higher price. In fact, around the same time, through counsel, Stoler inquired with Audi whether Audi had any potential buyers in mind who would want Stoler's Audi franchise. At the suggestion of Audi's counsel, Jeremy Meyer reached out to Stoler to further discuss the issue. However, it turned out that Audi had no potential buyers in mind. Instead, Audi was seeking a Seller's Assist letter that would have permitted Audi merely to begin to shop the franchise around and solicit offers. Any buyers would have eventually been solicited by Audi would have had to be willing, and able, to find a real estate solution, as the deal did not have any real estate included. Stoler had no guarantee that Audi could find a buyer that would make a higher or better offer than Priority One, or that Audi would not still try to terminate Stoler at the end of the cure period, as Mr. Del Rosso had threatened. Instead of beginning a lengthy and uncertain solicitation process that would have run while (1) Stoler received no bonus money from Audi, and (2) Stoler was under constant threat of termination, Stoler decided to proceed with the sale to Priority One that had already been negotiated.

**INTERROGATORY NO. 5:** Identify each offer that Stoler received for any of its dealerships, including the dates of such offers, any pricing terms and the names of the persons or entities making such offers.

**ANSWER:** Plaintiff has received the following offers for the purchase of the Len Stoler Group, excluding the New York dealerships:

1) MVC Capital – summer of 2011 - $54MM of implied Enterprise Value

2) McClarty Wellspring – summer 2012 - $66MM of Blue Sky
3) Open Road Capital – summer of 2014 - $61.25MM of Blue Sky
4) Priority One – May 2015 – approximately $55MM of Blue Sky
5) One Rock Capital – October 2015 - $74MM of Blue Sky


**INTERROGATORY NO. 6:** Identify each piece of real property that Stoler considered as a potential site for an exclusive Audi dealership.

**ANSWER:** Plaintiff reviewed and considered the following pieces of real estate as a potential site for an exclusive Audi dealership:

1) 11227 Reisterstown Road – Owings Mills, MD
2) 10550 Reisterstown Road – Owings Mills, MD
3) 9800 Reisterstown Road – Owings Mills, MD
4) 10246 Reisterstown Road – Owings Mills, MD
5) 8528 Baltimore National Pike – Ellicott City, MD


**INTERROGATORY NO. 7:** Identify every generally available benefit of being an Audi dealer that AoA denied to, or threatened to deny to, Stoler,

**ANSWER:** Subject to and without waiving its objections, Plaintiff answers as follows: For at least three years, Audi refused to pay Stoler the higher Exclusive Bonus equal to 3.75% of MSRP on every new Audi vehicle sold, on the ground that Stoler did not have an exclusive facility. Beginning January 1, 2016, Audi refused to pay Stoler any Standards Bonus whatsoever.

**INTERROGATORY NO. 8:** Identify every reduction in the price of a motor vehicle charged to a dealer that Audi provided in exchange for any agreement by a dealer with respect to its dealership facility.

**ANSWER:** Subject to and without waiving its objections, Plaintiff answers as follows: For at least three years, Audi refused to pay Stoler the higher Exclusive Bonus equal to 3.75% of MSRP on every new Audi vehicle sold, on the ground that Stoler did not have an exclusive facility. Beginning January 1, 2016, Audi refused to pay Stoler any Standards Bonus whatsoever.

**INTERROGATORY NO. 11:** Identify with particularity the damages to which you contend you are entitled as a result of your claims, and, to the extent that the damages include attorneys' fees, explain the methodology by which the damages pertinent to each count of the Complaint are segregated from the other attorney's fees you have incurred or will incur in connection with the parties' dispute.

**ANSWER:** Stoler claims the following categories of damages as a result of Audi's actions:

- Automatic damages equal to the difference between the Brand Dedicated Standards Bonus that Stoler received from January 1, 2013 through December 31, 2015 on all new cars sold, and the Exclusive Standards Bonus that Stoler should have received.

- Automatic damages equal to the Exclusive Bonus Audi refused to pay Stoler in 2016.

- Lost profits and lost sales arising from the differential in pricing created between Stoler and its competitors as a result of Audi's differential incentive program.

- Diminished franchise value resulting from Audi's unlawful actions.

- Attorneys' fees accrued in this matter, as authorized under the Maryland Dealer Act.

For more specific answers, Plaintiff refers Audi to the reports prepared by its experts, Joseph Roesner and Todd Berko.

**INTERROGATORY NO. 12:** Identify the disposition of all bonus funds paid to Stoler by AoA.

**ANSWER:** Standards Bonus funds were deposited by quarterly wire transfer from Audi into Stoler's corporate general operating account, and reflected upon Stoler's financial statements submitted to Audi.

**INTERROGATORY NO. 13:** Identify the per-vehicle margins that Stoler Audi obtained during each year, including an explanation of all costs factored into such margin.

**ANSWER:** Plaintiff's below per-vehicle margins per year were calculated to include gross profits earned based on the selling price of the vehicle over the cost of the vehicle plus any sales associated with finance and insurance as well as factory incentives and documentary fees.

(1) 2011 –$5,710
(2) 2012 - $5,839
(3) 2013 - $5,032
(4) 2014 - $4,571
(5) 2015 - $4,525
(6) 2016 - $3,145

**INTERROGATORY NO. 14:** Identify any actions taken by Stoler to manipulate, alter, or promote search results on Google.com, including but not limited to sponsored links, advertisements, search engine optimization, meta tags, etc.

**ANSWER:** No answer to this interrogatory is required as Plaintiff has agreed to drop its internet marketing related claims.

**INTERROGATORY NO. 15:** Identify any actions taken by Stoler to convert sales leads based on Internet sources into sales of new Audi vehicles.

**ANSWER:** No answer to this interrogatory is required as Plaintiff has agreed to drop its internet marketing related claims.

**INTERROGATORY NO. 16:** Identify each Internet advertisement by another Audi dealer that promoted or offered a lower price for a new Audi vehicle than Stoler's Audi dealership.

**ANSWER:** No answer to this interrogatory is required as Plaintiff has agreed to drop its internet marketing related claims.

**INTERROGATORY NO. 17:** Identify each statutory violation that AoA committed.

**ANSWER:** Audi demanded Stoler enter into the Facility Agreement and construct an exclusive facility, threatened to withhold Standards Bonus if Stoler did not do so, and then actually withheld Standards Bonus when Stoler did not start construction of the exclusive facility on time. This conduct violated Maryland Code §§ 15-207(b)(2), (h)(1)(i), (h)(2)(i), (h)(2)(ii), (h)(3)(i), and (h)(3)(ii).

**INTERROGATORY NO. 19:** Identify Stoler's average gross profits and net profits on the new Audi vehicles that it sold at retail, and explain how you arrive at such figures.

**ANSWER:** Plaintiff's below average gross and net profit figures on new Audi vehicles sold at retail were per year were calculated to include gross profits earned based on the selling price of the vehicle over the cost of the vehicle plus any sales associated with finance and insurance as well as factory incentives and documentary fees less any variable and semi-variable expenses.

      (1) 2011 - $2,335
      (2) 2012 - $2,374
      (3) 2013 - $1,524
      (4) 2014 - $581
      (5) 2015 – ($755)
      (6) 2016 – ($1,752)

**INTERROGATORY NO. 20:** Identify any communications with the purchaser of Stoler's Audi dealership operations that are not reflected in any of the documents produced in response to AoA's First Set of Requests for Production to Stoler.

**ANSWER:** Representatives of Stoler had in-person and telephonic communications with the purchaser of Stoler's Audi dealership.

**INTERROGATORY NO. 21:** Identify any communications regarding the Facility Agreement or any matters contemplated or reflected therein that are not reflected in any of the documents produced in response to AoA's First Set of Requests for Production to Stoler.

**ANSWER:** Representatives of Stoler had in-person and telephonic communications with Audi regarding the Facility Agreement and compliance with the Facility Agreement.

**INTERROGATORY NO. 22:** Identify, on a year-end basis for each year in question (except for 2016, which should be addressed on an April year-to-date basis), the following data points with respect to Stoler's Audi dealership's financial performance, as distinct from the finances or operations of any other dealership owned by or affiliated with Stoler or any of its Owners (where financial items are shared by or commingled among Stoler's Audi dealership and other dealerships, your answer should allocate the appropriate portion of such item to the Audi dealership):
   a. Net earnings; and
   b. All fixed expenses, by category.

**ANSWER:**

a. **Net Earnings:**

   2011 - $622,884
   2012 - $670,883
   2013 - $284,068
   2014 – ($46,509)
   2015 – ($540,596)
   2016 – ($151,005)

Plaintiff's net earnings are virtually impossible to completely separate as between Audi and Porsche as many expense line items are shared. The above amounts represent Adjusted

Earnings Before Income Taxes for the combined dual of Porsche and Audi and allocates 75% of the net number to Audi and 25% to Porsche based on the approximate ratio of new cars sold by each franchise as well as the gross profit across all departments generated by both franchises.

b. **Fixed Expenses:**

|  | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| Utilities | $38,000 | $34,726 | $34,647 | $33,585 | $35,225 | $11,465 |
| Rent | $152,700 | $150,750 | $150,750 | $156,528 | $158,328 | $54,893 |
| R&M | $57,340 | $54,168 | $48,533 | $49,928 | $61,070 | $22,775 |
| Insurance | $23,841 | $20,018 | $24,729 | $27,349 | $25,277 | $8,820 |
| R/E Taxes | $15,539 | $16,561 | $17,813 | $18,899 | $19,270 | $7,083 |
| Taxes – Other | $10,952 | $6,209 | $8,125 | $6,480 | $9,072 | $2,868 |
| Depr & Amort | $114,078 | $116,196 | $116,865 | $123,319 | $132,756 | $26,101 |
| Total | $412,450 | $398,628 | $401,462 | $416,088 | $440,998 | $134,005 |

The figures above are allocated by taking 75% of the total fixed expenses on each financial statement line item on the combined Porsche/Audi financial statement.

**INTERROGATORY NO. 23:** Provide a complete explanation of your understanding, prior to execution, of whether the Facility Agreement was lawful.

**ANSWER:** Neither Stoler nor its counsel undertook an evaluation of the legality of the Facility Agreement prior to signing. Stoler therefore had no understanding of the legality of the Facility Agreement prior to signing.

**INTERROGATORY NO. 24:** Explain when you concluded that the Facility Agreement is or may be unlawful.

**ANSWER:** Plaintiff concluded on or about October 7, 2015 that the Facility Agreement was illegal.

DATED:  September 9, 2016                          /s/ Barbara S. Wahl

Barbara S. Wahl (VSB No. 24647)
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
202.857.6000 (Phone)
202.857.6395 (Fax)
barbara.wahl@arentfox.com

*Counsel for Plaintiff Len Stoler, Inc.
d/b/a Len Stoler Audi*

Of Counsel:

Russell P. McRory (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
Arent Fox LLP
1675 Broadway
New York, NY 10019
Tel: (212) 484-3942
Fax: (212) 484-3990

## VERIFICATION

David Leibowitz, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that he is the Chief Financial Officer of Plaintiff Len Stoler, Inc. d/b/a Len Stoler Audi, and has read the foregoing Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories to Plaintiff, is informed and believes the same are true based upon personal knowledge, as well as the records and information in the possession, custody or control of Plaintiff that are still in existence and thus far discovered in the course of preparation of these answers.

Executed this ____ day of September, 2016, in Owings Mills, MD.

_____
David Leibowitz

CERTIFICATE OF SERVICE

I, Russell P. McRory, hereby certify that on this 9th day of September, 2016, I served a true and accurate copy of the foregoing by email and U.S. Mail, First Class postage to the following:

Richard Mark Dare
Islerdare PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia 22182
mdare@islerdare.com

James R. Vogler
Daniel R. Fine
Jack O. Snyder, Jr.
Emily L. Gesmundo
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Jim.volger@bfkn.com
Dan.fine@bfkn.com
Jack.snyder@bfkn.com
Emily.gesmundo@bfkn.com

/s/ Barbara S. Wahl

Barbara S. Wahl (VSB No. 24647)
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
202.857.6000 (Phone)
202.857.6395 (Fax)
barbara.wahl@arentfox.com

*Counsel for Plaintiff Len Stoler, Inc.
d/b/a Len Stoler Audi*