**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| LEN STOLER, INC. d/b/a LEN STOLER AUDI, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| | ) | Case No. 1:15CV1659-TSE/JFA |
| *v.* | ) ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

---

**MEMORANDUM IN SUPPORT OF AoA'S MOTION FOR PARTIAL RECONSIDERATION OR ALTERNATE RELIEF**

---

*Of Counsel*:

Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia 22182
T: (703) 748-2690

James R. Vogler (*pro hac vice*)
Daniel R. Fine (*pro hac vice*)
Jack O. Snyder, Jr. (*pro hac vice*)
Emily L. Gesmundo (*pro hac vice*)
BARACK FERRAZZANO
 KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
T: (312) 984-3100

*Counsel for Volkswagen Group of America d/b/a Audi of America, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT....................................................................................................................... 3

I. AoA Is Entitled to Judgment as a Matter of Law Because It Did Not "Reduce the
Price Charged" to a Dealer. .................................................................................... 3

  A. The Plain Language of Section 15-207(h)(3) Requires That It Be Interpreted
to Apply Only to Reductions in Invoice Prices Charged to Dealers............................ 4

  B. The Structure of Section 15-207 Is Incompatible with Stoler's Interpretation............. 6

  C. Section 15-207(h)(3) Is Not an Antitrust Statute........................................................ 7

  D. The Undisputed Facts Show That AoA Did Not Reduce the Price Charged................. 8

II. AoA Is Also Entitled to Judgment Under Rule 12(c). ............................................. 9

CONCLUSION.................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bender v. Suburban Hosp., Inc.*,
159 F.3d 186 (4th Cir. 1998) ...............................................................................10

*Dept. of Assessments & Taxation v. Md.-Nat'l Capital Park & Planning Comm'n*,
702 A.2d 690 (Md. 1997) .......................................................................................5

*Dreher v. Experian Info. Sols., Inc.*,
No. 3:11-CV-00624-JAG, 2014 WL 2800766 (E.D. Va. June 19, 2014) ................8

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ...............................................................................11

*Ruffin v. Lockheed Martin Corp.*,
659 F. App'x 744 (4th Cir. 2016) .......................................................................9, 10

*Santoro v. Accenture Fed. Servs., LLC*,
748 F.3d 217 (4th Cir. 2014) .................................................................................7

*State v. Johnson*,
2 A.3d 368 (Md. 2010) ........................................................................................4, 5

*Stoddard v. State*,
911 A.2d 1245 (Md. 2006) .................................................................................5, 6, 7

*Wells Fargo Bank, N.A. v. Oceana Sensor Techs., Inc.*,
No. 2:11CV258, 2012 WL 12895556 (E.D. Va. Aug. 31, 2012) .............................3

STATUTES

Md. Code, Commercial Law § 11-201 *et. seq.* ................................................................8

Md. Code, Commercial Law § 11-202 ...........................................................................8

Md. Code, Commercial Law § 11-204 ...........................................................................7

Md. Code, Transp. § 15-207 .............................................................................. passim

OTHER AUTHORITIES

Webster's Third New International Dictionary of the English Language Unabridged
(Philip Babcock Gove, ed., 1993)..........................................................................5

**INTRODUCTION**

AoA is entitled to judgment on Stoler's § 15-207(h)(3) claim because, no matter how one looks at it—under a summary judgment standard or simply as a failure to state a claim—Stoler has no path to advance this claim to trial.  A trial on this claim (the "Price Reduction Claim") is unnecessary—it would subject AoA to an unneeded trial and waste scarce judicial resources.

**BACKGROUND**

In its motion for summary judgment (Dkt. No. 74), AoA sought judgment on each of the then-remaining claims in Stoler's Amended Complaint (Dkt. No. 10, (the "Complaint")).  In its January 25, 2017 Order addressing the parties' cross-motions for summary judgment, the Court granted summary judgment to AoA on several of those claims, leaving two in place: the Price Reduction Claim under Section § 15-207(h)(3)(i) and (ii) of the Maryland Transportation Code, and the "Coercion" Claim under Transportation Code § 15-207(b).  (Dkt. Nos. 45 (Pl. Mem.), 75 (AoA Mem.), 104 (Ct. Order)).

In denying the cross-motions for summary judgment on the Price Reduction Claim, the Court's analysis turned on material disputes of fact that it found regarding "whether the Standards Bonus payments reduced the price of each vehicle sold to Stoler within the *meaning* of § 15-207(h)(3)" and regarding "Stoler's alleged damages."  (Dkt. No. 103, Ct. Mem. at 19) (emphasis added).  The Court's Memorandum Opinion did not, however, adjudicate that meaning.  (*See also* Dkt. No. 46, AoA Mem. at 21-24 (arguing that such meaning requires the Court to reject Stoler's proffered interpretation of the statute)).

Adjudicating the meaning of Section 15-207(h)(3)—and in particular, the phrase "reduce the price of a motor vehicle charged to a dealer"—should dispose of the Price Reduction Claim and eliminate the need for trial.  The crux of Stoler's Price Reduction Claim is that AoA conditioned continued Standards Bonus payments on the "Facility Agreement," *i.e.,* Stoler's

1

agreement to build an exclusive dealership facility. (Dkt. No. 103, Ct. Mem. at 18-19; Dkt. No. 10, Compl. ¶¶ 29, 52, 53, 58, 59, 68 69, 72; Facility Agreement, attached to Dkt. No. 45-1, B. Stoler Decl., at Dkt. No. 45-2, Ex. E).

The part of § 15-207(h)(3) relevant to the Price Reduction Claim states that a "distributor . . . may not reduce the price of a motor vehicle charged to a dealer . . . in exchange for the dealer's agreement to * * * [b]uild or alter a sales or service facility[.]"  In its memorandum opposing Stoler's motion for partial summary judgment, AoA gave several reasons why the phrase "reduce the price of a motor vehicle charged to a dealer" should be given its plain and ordinary meaning. (Dkt. No. 46, AoA Mem. at 21-24).  AoA further urged the Court to reject Stoler's proffered interpretation, which would have the Court ignore well-established principles of statutory interpretation and read the phrase "have the *effect* of reduc[ing] the price" into the statute.  (*Id.;* *see also* Dkt. No. 45, Pl. Mem. at 9).[1]

When the statute's plain and ordinary meaning is measured against the undisputed facts, AoA is entitled to judgment on Stoler's Price Reduction claim.  Simply put, the statute must be read to prohibit only agreements that "reduce the price of a motor vehicle charged to a dealer," *i.e.*, reduce the invoice price that the dealer pays for the vehicle when it purchases the vehicle at wholesale.  After-the-fact bonus payments, which are paid on cars that the *dealer* sells, do not qualify.

The undisputed facts are:  that the bonus payments at issue are paid by AoA to a dealer on each qualifying *sale* of a new vehicle by that dealer (*i.e.*, not the dealer's wholesale *purchase* of the car); and that AoA charges all of its dealers the same invoice price for its motor vehicles.  (Dkt.

---

[1] AoA does not concede that Stoler has proved or can prove that the Standards Bonus has the "effect" of reducing the price of a vehicle.

No. 52, JSUF ¶¶ 7-8, 10, 58).  Since the undisputed facts are that AoA charges the same wholesale

price for a given vehicle to every Audi dealer, regardless of whether the dealer has an agreement

to build or alter a facility, there is no material dispute of fact: AoA has not reduced the price of a

motor vehicle charged to a dealer, and AoA is entitled to judgment on the Price Reduction Claim.

Stoler's arguments to the contrary ignore basic canons of construction and disregard numerous

Maryland statutes.

## LEGAL STANDARD

It is "just and correct" to grant a motion to reconsider denial of summary judgment where

the party seeking relief is entitled to it and where "denying reconsideration would contribute little

judicial economy or finality, but would necessitate a trial on factual issues that [the other party

has] ignored and [is] unlikely to seriously contest." *Wells Fargo Bank, N.A. v. Oceana Sensor*

*Techs., Inc.*, No. 2:11-cv-258, 2012 WL 12895556, at \*2 (E.D. Va. Aug. 31, 2012).  The Court's

power to provide relief is broad, particularly because no final judgment has been entered.  *See id.*

at \*1, (*citing Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

Such power is properly exercised where it serves the "ultimate responsibility of the federal courts

. . . to reach the correct judgment under law." *Id. (citing Am. Canoe*, 326 F.3d at 515).

## ARGUMENT

I.    **AoA Is Entitled to Judgment as a Matter of Law Because It Did Not "Reduce the
      Price Charged" to a Dealer.**

Under the correct interpretation of Section 15-207(h)(3), AoA is prohibited from reducing

the price of a motor vehicle charged to a dealer, *i.e.*, the invoice price, in exchange for an agreement

3

to build a facility.[2]  Stoler's theory of the case depends upon reading the phrase "has the effect of

a reduction" into the statute to transform Section 15-207(h)(3) into a provision that regulates

rebates and incentives.  Section 15-207(h)(3) does not apply to rebates and incentives, and the

General Assembly has shown that it is perfectly capable of regulating rebates and incentives when

it wishes to do so.  The Court should reject any interpretation that would broaden the scope of the

statute beyond its plain and ordinary meaning.

> **A.  The Plain Language of Section 15-207(h)(3) Requires That It Be Interpreted to Apply Only to Reductions in Invoice Prices Charged to Dealers.**

The plain language of the statute is discerned through familiar principles of statutory

interpretation applied by Maryland courts, including those principles noted by this Court in its

Memorandum Opinion (*See* Dkt. No. 103, 8-9) and in AoA's opposition to Stoler's motion for

partial summary judgment (Dkt. No. 46, 21-24).  A basic canon of statutory interpretation under

Maryland law is that courts "neither add nor delete language so as to reflect an intent not evidenced

in the plain and unambiguous language of the statute[.]"  *State v. Johnson*, 2 A.3d 368, 373 (Md.

2010) (citation omitted).  Therefore, the Court should "begin with the normal, plain meaning of

the language of the statute."  *Id.*

The normal, plain meaning of the phrase "reduce the price of a motor vehicle charged to a

dealer" is that the statute prohibits AoA from charging a lower price to dealers for new vehicle

inventory, *i.e.*, lowering the invoice price.  This interpretation comports with the principle that a

court must avoid "a construction of the statute that is unreasonable, illogical, or inconsistent with

---

[2] The full text of Section 15-207(h)(3) is: "A manufacturer, distributor, or factory branch may not reduce the price of a motor vehicle charged to a dealer or provide different financing terms to a dealer in exchange for the dealer's agreement to:
  (i)   Maintain an exclusive sales or service facility;
  (ii)   Build or alter a sales or service facility; or
  (iii)   Participate in a floor plan or other financing arrangement."

common sense." *Stoddard v. State*, 911 A.2d 1245, 1250 (Md. 2006) (citation and quotation marks omitted).

This common-sense reading of the statute is also aided by consulting a dictionary, which is a proper interpretive aid under Maryland law. *See Dept. of Assessments & Taxation v. Md.-Nat'l Capital Park & Planning Comm'n*, 702 A.2d 690, 696 (Md. 1997). The relevant, plain-language definition of "price" is "the amount of money given or set as the amount to be given as a consideration for the sale of a specified thing." (Webster's Third New International Dictionary of the English Language Unabridged 1798 (Philip Babcock Gove, ed., 1993) ("price," def. 2b). The relevant, plain-language definition of "reduce" is "to diminish in value." (*Id.* at 1905 ("reduce," def. 9e)). The relevant, plain-language definitions of "charge" are "to fix or ask (a sum) as a fee or payment" or "to ask payment of (a person)." (*Id.* at 377 ("charge," def. 5b)). Thus, the phrase "reduce the price of a motor vehicle charged to a dealer" must mean in this context "to diminish in value the amount of money given or set as a consideration (or asked as payment) for the sale [by AoA to Stoler] of a specified thing [new vehicle inventory]"; put more simply, the phrase must mean "reduced the amount of money Stoler paid or was asked to pay for its purchase of new vehicle inventory."

Viewed under such plain lighting, Section 15-207(h)(3) applies to agreements that change the actual, invoiced prices for new vehicle inventory. That is, Section 15-207(h)(3) does not apply to after-the-fact bonus payments awarded on sales of certain cars that the dealer sells at retail. Because the meaning of the plain language of Section 15-207(h)(3)'s phrase "reduce the price charged" is unambiguous, the Court should apply the statute as written. *Johnson*, 2 A.3d at 373. By contrast, accepting Stoler's interpretation—by injecting the phrase "has the effect of a

reduction" into the statute—would require the Court to abandon these principles of statutory interpretation and inject text and meaning that is simply not in the statute.

### B.   The Structure of Section 15-207 Is Incompatible with Stoler's Interpretation.

Stoler's argument that the Court should construe "reduce the price charged" to mean "has the effect of a reduction on price" would also require the Court to ignore the structure of Section 15-207.  Ignoring such structure also ignores the principle that the "structure of the statute . . . . [and] how the statute relates to other laws" should be understood in construing any unclear language.  *Stoddard*, 911 A.2d at 662.

The General Assembly showed, in the specific context of Section 15-207's many subparagraphs, that it was perfectly capable of picking and choosing whether to regulate incentives (*see* subsections (e)(2), (h)(1), (i)(1), (i)(2), (k)(2)), rebates (*see* subsections (h)(1), (i)(1), (i)(2)), price reductions (*see* subsections (h)(1), (h)(3)), generally available benefits (*see* subsections (h)(2)), and so forth.  Had the legislature intended to regulate incentives or rebates in Section 15-207(h)(3)—something that the legislature did in neighboring subparagraphs—it would have said so.

Indeed, an attentive reading of the statute shows that the General Assembly intended to treat a "price reduction" as a distinct concept from mechanisms that may in theory have some effect on a dealer's cost structure, such as rebates and incentives.  *Compare* Section 15-207(h)(1) (placing restrictions on "consumer rebates, dealer incentives, price or interest rate reductions, or finance terms") *with* Section 15-207(h)(3) (placing restrictions on "reduc[ing] the price of a motor vehicle charged to a dealer or provid[ing] different financing terms").

The statute places only two express restrictions on rebates or incentives that are paid on the "sale of a vehicle" by a dealer—the exact setting in which Stoler brings its claim.  Specifically, the statute mandates that such incentives or rebates are: offered to all dealers of the same line

make; and not increased for meeting a performance standard unless such standard is reasonable. *See* Section 15-207(i).  By contrast, there is no provision that places restrictions on whether a distributor can enter into an agreement to pay a dealer an incentive for constructing a facility. Stoler's argument requires the Court to believe that the General Assembly smuggled the concept of a "rebate" or "incentive" into Section 15-207(h)(3), a subsection that does not use either term. Such a belief would run counter to the structure of the statute and would contravene the rule against interpretations that are "inconsistent with common sense." *Stoddard*, 911 A.2d at 1250.

### C. Section 15-207(h)(3) Is Not an Antitrust Statute.

At bottom, Stoler's "has the effect of a reduction" construction of Section 15-207(h)(3) would turn the Transportation Code into a general price discrimination statute.  The Transportation Code-as-antitrust-statute interpretation runs afoul of the principle that the "structure of the statute . . . . [and] how the statute relates to other laws" should be understood in construing any unclear language. *Stoddard*, 911 A.2d at 662.  Such interpretation would also violate the presumption that legislators do not "hide elephants in mouseholes"—that is, they do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions . . . ." *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 223 (4th Cir. 2014).

Maryland, like many other states, already has an antitrust statute that addresses price discrimination and is modeled on the Federal Robinson-Patman Act. *See* Md. Code, Commercial Law § 11-204.  Unlike Transportation Code § 15-207(h)(3), Maryland's price discrimination statute is worded so as to include devices that have an "effect" on price. *See* Commercial Law § 11-204(a)(3) (providing that a person may not "*[d]irectly or indirectly* discriminate in price among purchasers of commodities or services of like grade and quality, if the effects of the discrimination may [s]ubstantially lessen competition [or] [t]end to create a monopoly . . .") (emphasis added).  To import the concept of price "effects" from the Commercial Law to the

Transportation Code would violate the whole-text canon, which "calls on a judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *3 (E.D. Va. June 19, 2014) (*quoting* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012)).  Whereas the concept of "effects" on price is well-ensconced in the statutory scheme of the Commercial Law, the concept's absence from the text of Transportation Code § 15-207(h)(3) means that it has no place in that carefully constructed provision.

A further reason why the "effects" concept should not be imported from antitrust law to the Transportation Code is that Maryland law directs courts to interpret the state code's antitrust law subtitle (*i.e.*, Commercial Law § 11-201 *et. seq.*) in a manner that is consistent with federal antitrust law.  Commercial Law § 11-202(a)(2).  The Maryland Transportation Code contains no such direction to courts to interpret Section 15-207(h)(3)—or any other provision—in accordance with federal antitrust law, and Section 15-207(h)(3) omits language that would prohibit agreements that have an "effect on" price, so it would be nonsensical to overlay antitrust law concepts on top of the plain language of § 15-207(h)(3).

### D.  The Undisputed Facts Show That AoA Did Not Reduce the Price Charged.

Based on the foregoing, the correct legal interpretation of Section 15-207(h)(3) is that it prohibits only agreements that reduce the invoice price of a car, not agreements that may ultimately have the economic effect of reducing the invoice price of a car.  As noted in the Background section above, the undisputed material facts are that: the bonus payments at issue on the Price Reduction Claim are paid by AoA to a dealer on each qualifying *sale* of a new vehicle by that dealer (*i.e.*, not the dealer's wholesale *purchase* of the car); and AoA charges all of its dealers the same invoice

8

price for its motor vehicles. (JSUF ¶¶ 7-8, 10, 58). Simply put, after-the-fact rebates are not reductions in price under Maryland law.

None of the disputed facts advanced by Stoler that the Court relied upon in denying summary judgment to AoA disturb the above-referenced undisputed facts. In its Memorandum Opinion, the Court stated: "Stoler contends that AoA violated § 15-207(h)(3) because (i) AoA conditioned continued Standards Bonus payments on Stoler's agreement to build an exclusive dealership facility, and (ii) AoA allegedly *treats* the bonuses as reducing the price of vehicles by purportedly 'track[ing] all bonuses earned by a dealer on a vehicle by vehicle basis[.]'" (Dkt. No. 103, Ct. Memo. 18-19, fn 19). The first point reinforces the conclusion that the bonus payments in question did not reduce the invoice price, because they were paid to Stoler when Stoler *sold* a car to a consumer, not when Stoler *bought* a car from AoA. The second point—that AoA "treats" the bonuses as reducing the price—is just another way of contending that the bonuses have the economic effect of reducing the price. Accordingly, AoA is entitled to judgment on Stoler's Price Reduction Claim.

## II.     AoA Is Also Entitled to Judgment Under Rule 12(c).

AoA is also entitled to judgment on the pleadings on Stoler's Price Reduction Claim pursuant to Rule 12(c). As to the meaning of the statute, AoA incorporates by reference its arguments under Part I above. In applying the correct legal interpretation of Section 15-207(h)(3) and accepting all well-pled allegations in the operative complaint as true, the Court should enter judgment for AoA on Stoler's Price Reduction Claim.

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *Ruffin v. Lockheed Martin Corp.*, 659 F. App'x 744, 745 (4th Cir. 2016). In so doing, the court should accept as true all factual allegations, while accepting "conclusions the plaintiff draws from

the facts only to the extent they are plausible based on the factual allegations." *Id.* at 745-46

(citations and quotation marks omitted).  Critically, a plaintiff who "expounds" the facts "is bound

by such exposition[,]" with the consequence that if such facts "show that he has no claim, then he

is out of luck." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (citation and

quotation marks omitted).

Stoler's allegations, taken as true, would demonstrate that AoA did not reduce the price

that Stoler paid for new vehicle inventory.  Stoler has alleged that the Standards Bonus *affects* the

price, has *the effect of lowering the price*, *effectively lowers the price*, and lowers the *net price* a

dealer pays for its new vehicle inventory (Compl. ¶¶ 18, 53, 59, 60, 68, 69, 72).  None of those

allegations addresses the invoice price that Stoler pays for new Audi vehicles at wholesale.  The

consequence of such allegations is that Stoler has pled itself out of a claim that AoA reduced the

price within the meaning of Maryland law.  *See Bender*, 159 F.3d at 192.

Stoler cannot avoid this result with its conclusory allegation that "the Facility Agreement

is invalid as the receipt of the Standards Bonus reduces the price Len Stoler pays per vehicle[.]"

(Compl. ¶ 29).  That allegation has to be read in the context of the rest of Stoler's allegations,

which show that the bonuses are paid on cars *sold* by dealers, not cars *bought* by dealers.  For

example, in Paragraph 52 of the Complaint, Stoler acknowledges that the bonus payments at issue

are given "on every new Audi vehicle sold in a given month."  Also, the "effect" allegations noted

above show that Stoler is not actually alleging a reduction in the invoice price.  *See Bender*, 159

F.3d at 192 (affirming dismissal of employment claim where factual allegations demonstrated the

absence of the plaintiff's claimed employment relationships).

Paragraph 29 of the Complaint is no more than a conclusory allegation that is insufficient

to withstand judgment on the pleadings.  Such "'naked' allegations—a 'formulaic recitation' of

the necessary elements—'are no more than conclusions' and therefore do not suffice." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  In *McCleary-Evans*, the court affirmed dismissal where the plaintiff's race discrimination complaint alleged only the conclusion that employment decision-makers were biased, rather than making allegations to explain why applicants of a different race were hired instead of the plaintiff. *McCleary-Evans*, 780 F.3d at 586.  Stoler's complaint shares the same conceptual problem of reciting the element of a claim in conclusory fashion without making the allegations necessary to support that conclusion.  It recites the element under § 15-207(h)(3) that AoA reduced the price that Stoler pays per vehicle.  But in light of its allegations that the Standards Bonus is paid on vehicles *sold*, Stoler is not alleging a reduction in invoice price, as required by the correct interpretation of § 15-207(h)(3).

Accordingly, AoA is entitled to judgment on the pleadings on Stoler's Price Reduction Claim because Stoler has failed to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, AoA's motion should be granted, and the Court should enter judgment for AoA on Stoler's Price Reduction Claim.  Furthermore, in the event that the Court grants AoA's Rule 12(b)(1) Partial Motion to Dismiss, AoA requests that the Court enter final judgment in favor of AoA on each of Stoler's claims.

Dated:  February 24, 2017

Respectfully submitted,

/s/
James R. Vogler (*pro hac vice*)
Daniel R. Fine (*pro hac vice)*
Jack O. Snyder, Jr. *(pro hac vice)*
Emily L. Gesmundo (*pro hac vice*)
BARACK FERRAZZANO KIRSCHBAUM

/s/
Richard Mark Dare (VSB No. 14146)
ISLERDARE PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia  22182

   & NAGELBERG LLP  
200 West Madison Street, Suite 3900  
Chicago, Illinois 60606  
T: (312) 984-3100  
F: (312) 984-3150  
Jim.Vogler@bfkn.com  
Dan.Fine@bfkn.com  
Jack.Snyder@bfkn.com  
Emily.Gesmundo@bfkn.com

T: (703) 748-2690  
F: (703) 748-2695  
mdare@islerdare.com

*Counsel for Defendant Volkswagen Group of America d/b/a Audi of America, Inc.*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 24th day of February, 2017, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using CM/ECF system, which will send a notification of such filing (NEF) to the following:

Barbara S. Wahl, Esq.
Arent Fox LLP
1717 K Street, N.W.
Washington, DC  20006
Barbara.wahl@arentfox.com

Russell P. McRory, Esq.
Arent Fox LLP
1675 Broadway
New York, NY 10019
Russell.mcrory@arentfox.com

Sean Nicholas Clerget, Esq.
Arent Fox LLP
1717 K Street NW
Washington, DC 20036-5344
sean.clerget@arentfox.com

<br>

     /s/
     R. Mark Dare, Va. Bar No. 14146
     ISLERDARE PC
     1945 Old Gallows Road, Suite 650
     Vienna, VA 22182
     (703) 748-2690
     (703) 748-2695 (fax)
     mdare@islerdare.com
     *Counsel for Defendant*
     *Volkswagen Group of America, Inc.*
     *d/b/a Audi of America, Inc.*

13